SAINT NICHOLAS BANK of New York, Appellant, *v.* THE STATE NATIONAL BANK, Respondent.

A bank receiving commercial paper for collection is, in this state, in the absence of a special agreement, liable for a loss occasioned by the default of its correspondents or other agents selected by it to make the collection.

Where the sub-agent makes the collection, but fails to pay over the proceeds and is insolvent, the insolvency does not shield the collecting agent from liability for the loss.

Judicial expositions by a court of another state of rules of the common law applicable to commercial transactions, do not bind the courts of this state.

Plaintiff, a banking corporation organized and doing business in the city of New York, in the usual course of business, sent to defendant, a similar corporation doing business in the city of Memphis, a check drawn upon a Texas bank for collection. Plaintiff had for two years been accustomed to send commercial paper to defendant for collection, including paper payable in Texas. Defendant received the check, indorsed it for collection and forwarded it to A. & L., its correspondents in Texas, who were bankers in good standing. A. & L. collected the check and remitted to defendant their sight draft for the amount drawn by them upon a firm in New York city. Defendant received the draft and

Statement of case.

forwarded it to a New York bank for collection. Said bank pre-sented it to the payors; they had suspended payment and payment was refused. The draft was accordingly protested and returned to defendant; the latter mailed it to plaintiff, but plaintiff refused to accept it. In an action to recover the proceeds of the check, *held,* that plaintiff was entitled to recover.

*Indig* v. *N. C. Bank* (80 N. Y. 100), distinguished.

Defendant claimed the contract was a Tennessee contract, and that under the law of Tennessee it was not liable. For the purpose of showing the law of that state, it put in evidence a decision of the Supreme Court in that state not based upon a statute, but upon the principles of common law supposed to be applicable to the facts in that case. *Held,* that the decision was not binding upon the courts of this state.

It did not appear how or in what manner the contract between the parties was made. *Held,* the claim that the contract was a Tennessee contract was not sustained; that, in the absence of proof, it could not be assumed the contract was made in Tennessee, nor could it be regarded as a Tennessee contract for the reason that it was to be performed there; as, so far as the check was concerned, the performance was to be in Texas and New York.

(Argued May 4, 1891; decided June 2, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 13, 1891, which reversed a judgment in favor of plaintiff entered upon a verdict directed by the court and granted a new trial.

This action was brought to recover the proceeds of a draft for $473.57 sent for collection by the plaintiff to the defendant, and paid to the defendant's correspondents. The trial resulted in the direction of a verdict for the plaintiff for the amount demanded upon appeal to the General Term, the judgment entered upon the verdict was reversed and a new trial ordered. From the order of reversal the plaintiff appeals to this court.

There is no controversy as to the facts, which for the most part were set forth in a stipulation read upon the trial. They may be summarized as follows :

The plaintiff is a corporation organized under the laws of the state of New York, and engaged in the business of bank-ing in the city of New York ; and the defendant is a corpora-tion organized under the National Banking Act, and doing business in the city of Memphis.

For two years prior to the 18th day of November, 1884, the plaintiff had been accustomed to send checks, notes and drafts to the defendant for collection, including such as were drawn upon persons residing at a distance, in the state of Texas and elsewhere. The commercial paper was enclosed in letters, consisting of printed forms, filled out by the insertion in writing of the date, the name of the defendant's cashier, and a description of the enclosure. The checks and drafts were collected by the defendant, and the proceeds were remitted to the plaintiff, less one-fourth of one per cent, the defendant's commission, and the expense incurred in making distant collections.

On November 10, 1884, the plaintiff was the owner and holder of a check for $473.57, dated November 6, 1884, drawn upon the City National Bank of Dallas, Texas, by A. D. Aldridge & Co., and payable to the order of Henry Levy & Son. This check was indorsed by the plaintiff to the defendant for collection, and was sent to the latter in the usual course of business.

The defendant received the check on November 13, 1884, and on that day indorsed it for collection and forwarded it by mail to the firm of Adams & Leonard, at Dallas, Texas. They were at the time, and had been for many years bankers in good standing at Dallas, and the correspondents of the defendant. They received the check on November 17, 1884, and on that day duly presented it for payment to the bank upon which it was drawn, and it was immediately paid, and the proceeds were received by them. They then remitted to the defendant a sight draft for the amount collected, drawn by them upon Jemison & Co. of the city of New York. This draft was sent by the defendant for collection to the First National Bank of New York, and on November 24, 1884, was presented to Jemison & Co., who, in the meantime, had suspended payment. The draft was accordingly protested and returned to the defendant; thereupon, the defendant, on November 28, 1884, mailed the protested draft to the plaintiff and the plaintiff refused to accept it. Adams & Leonard had failed in business before the draft on Jemison & Co. was presented for payment.

The only evidence offered by the defendant in opposition to these facts was proof of a decision of the Supreme Court of Tennessee, in the case of *Bank of Louisville* v. *First National Bank of Knoxville*, which is referred to in the opinion.

*Charles E. Hughes* for appellant.   A bank receiving a bill of exchange in one state for collection from a drawee residing in another state, in the absence of a special agreement, is liable for a loss occasioned by the default of its correspondents selected to effect the collection. (*Allen* v. *M. Bank*, 22 Wend. 215 ; *M. C. Bank* v. *A. C. Bank*, 3 Seld. 459 ; *C. Bank* v. *U. Bank*, 11 N. Y. 203 ; *Ayrault* v. *Pacific Bank*, 47 id. 570 ; *Naser* v. *F. N. Bank*, 116 id. 498 ; *E. N. Bank* v. *T. N. Bank*, 112 U. S. 282 ; *Titus* v. *M. N. Bank*, 35 N. J. L. 588 ; *Wingate* v. *M. Bank*, 10 Penn. St. 104 ; *Reeves* v. *S. Bank*, 8 Ohio St. 465 ; *Tyson* v. *S. Bank*, 6 Blackf. 225 ; *Simpson* v. *Waldby*, 30 N. W. Rep. 199 ; *Power* v. *Bank*, 35 Alb. L. J. 185 ; *Mackersy* v. *Ramsays*, 9 Cl & Fin. 818.) The liability of a collecting bank extends not only to the acts of its correspondents by which the collection is defeated, but to a failure to remit the proceeds of the commercial paper when collected. (*Bradstreet* v. *Everson*, 72 Penn. St. 124.) The insolvency of its correspondents furnishes no excuse for the defendant's failure to remit the proceeds of the collection. (*Mackersy* v. *Ramsays*, 9 Cl. & Fin. 818 ; *Simpson* v. *Waldby*, 30 N. W. Rep. 199 ; *Bradstreet* v. *Everson*, 72 Penn. St. 124 ; *Reeves* v. *Bank*, 8 Ohio St. 465 ; *Hoover* v. *Wise*, 91 U. S. 308 ; *E. N. Bank* v. *T. N. Bank*, 112 id. 282.) The draft drawn by Adams & Leonard to the order of the defendant and tendered by the latter to the plaintiff was not a remittance of the proceeds of the collection. (*People* v. *Bank of Dansville*, 39 Hun, 189 ; *Indig* v. *N. C. Bank*, 80 N. Y. 100 ; *Briggs* v. *C. N. Bank*, 89 id. 182.) The law of Tennessee furnishes no defense. (*Monroe* v. *Douglass*, 5 N. Y. 447 ; *Schoonmaker* v. *Bonnie*, 119 id. 565 ; *Volkening* v. *DeGraff*, 81 id. 268 ; *Williams* v. *Birch*, 6 Bosw. 674 ; *Rowe* v. *Comley*, 11 Daly. 317 ; *Bank of Louisville* v. *F. N. Bank*, 8 Baxter, 101 ;

*Dickinson* v. *Edwards*, 77 N. Y. 573 ; *Leavenworth* v. *Brock‑way*, 2 Hill, 202 ; *F. N. Bank* v. *F. N. Bank*, 77 N. Y. 320 ; *Swift* v. *Tyson*, 16 Pet. 19 ; *Oates* v. *N. Bank*, 100 U. S. 239 ; *Faulkner* v. *Hart*, 82 N. Y. 413.)

*A. Walker Otis* for respondent.  The contract was a Ten‑nessee contract and should be governed by Tennessee laws. (*Buell* v. *Chapin*, 99 Mass. 594 ; *Gurney* v. *Howe*, 9 Gray, 404 ; *Crane* v. *Pratt*, 12 id. 348 ; *M. Bank* v. *M. Bank*, 6 Metc. 26 ; Morse on Banking, §§ 265, 287 ; Meacham on Agency, § 515.) The New York bank, by voluntarily placing collections in the hands of the Memphis Bank by implication agreed that such collections might be made subject to exemption from liability for the defaults of sub-agents.  (Whart. on Confl. of Laws, § 405 ; *Owings* v. *Hull*, 9 Pet. 607 ; Morse on Banking, § 9 ; *Bank of Washington* v. *Triplett*, 1 Pet. 25 ; *Ayrault* v. *P. Bank*, 47 N. Y. 570 ; *Walls* v. *Bailey*, 49 id. 464.)

Earl, J.  The rule has long been established in this state that a bank receiving commercial paper for collection, in the absence of a special agreement, is liable for a loss occasioned by the default of its correspondents or other agents selected by it to effect the collection.  (*Allen* v. *Merchants' Bank*, 22 Wend. 215 ; *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459 ; *Commercial Bank* v. *Union Bank*, 11 id. 203 ; *Ayrault* v. *Pacific Bank*, 47 id. 570 ; *Naser* v. *First National Bank*, 116 id. 498.)  And the same rule prevails in some of the other states, in the United States Supreme Court and in England.  (*Titus* v. *Mechanics' National Bank*, 35 N. J. L. 588 ; *Wingate* v. *Mechanics' Bank*, 10 Pa. St. 104 ; *Reeves* v. *State Bank*, 8 Ohio St. 465 ; *Tyson* v. *State Bank*, 6 Blackf. 225 ; *Simpson* v. *Waldry*, 30 N. W. Rep. [Mich.] 199 ; *Mackersy* v. *Ramsays*, 9 Cl. & Fin. 818.)  In such a case the collecting bank assumes the obligation to collect and pay over, or remit the money due upon the paper, and the agents it employs to effect the collection, whether they be in its own banking house or at some distant place, are its agents, and in

no sense the agents of the owner of the paper. Because they are its agents it is responsible for their misconduct, neglect or other default.

Here when this money was received by Adams & Leonard, the defendant's agent, it was, in fact, received by it, and it became absolutely bound to pay or remit the same to the plaintiff. It is difficult to see upon what principle the defendant could be held liable if Adams & Leonard, its agents, had carelessly failed to collect the draft, or had collected it and then purposely misappropriated the proceeds thereof, and yet not be liable for their failure to pay over the proceeds in consequence of their unexplained insolvency. Upon what principle can the defendant be held liable for one default of their agents and not for every default. That the insolvency of the sub-agent in such a case does not shield the collecting agent from responsibility for the loss has been decided in several cases quite analogous to this. (*Reeves* v. *State Bank ; Simpson* v. *Waldry ; Mackersy* v. *Ramsays, supra ; Bradstreet* v. *Everson,* 72 Pa. St. 124.) It is not needful now to vindicate the principle upon which these cases rest, as that has been sufficiently done by learned judges writing the opinions therein. They are well supported by many analogous cases in other branches of the law, and it is believed they lay down the best and safest rule and subserve the wisest commercial policy.

The case of *Indig* v. *National City Bank* (80 N. Y. 100) is not opposed to these views. There the defendant received a note for collection which was payable at the bank of Lowville, and it sent the note directly to that bank for payment, which on the next day sent a draft for the amount of the note to the defendant and failed before the draft reached its destination, and it was held that the loss did not fall upon the defendant. That conclusion was reached by holding that the Lowville bank was not the agent of the defendant, but that the defendant was in the same position as if it had sent the note to some agent and he had received the proceeds thereof and had then bought a draft on New York of the Lowville bank for the amount, and the bank had then failed before the

draft was paid. The defendant there would have been held liable if the Lowville bank had been its agent for the collection of the note. (*Briggs* v. *Central National Bank*, 89 N. Y. 182.)

After Adams & Leonard had received payment of the draft they drew a draft upon Jemison & Co. for the amount, and sent that to the defendant for the purpose of discharging their obligation to the defendant. That draft was not made for the purpose of remitting the proceeds of the collection to the plaintiff, and was not used by the defendant for that purpose. It sent the draft to the First National Bank of New York for collection, intending afterward to remit the proceeds of the collection to the plaintiff in some other way. After Adams & Leonard and Jemison & Co. had failed, it sent the worthless draft to the plaintiff. By so doing it did not discharge its obligations to the plaintiff. If Adams & Leonard had purchased a draft of the Dallas bank and sent that to the plaintiff, or if it had sent the draft to the defendant, and the latter had then sent it to the plaintiff, then, according to the doctrine of *Indig* v. *National City Bank*, the defendant would not have been responsible for the continued solvency of the Dallas bank. That case was much discussed here, and there was much difference of opinion about it. It is a border case and its doctrine should not be much extended.

The defendant, however, claims that the contract with the plaintiff is to be treated as a Tennessee contract, and that by the law of that state it cannot be made liable for this loss. Upon the trial, for the purpose of showing the law of that state, it put in evidence a decision of the Supreme Court in the case of *Bank of Louisville* v. *First National Bank of Knoxville* (8 Baxter, 101). In that case a bill of exchange payable at the First National Bank of Knoxville, was sent by a New York bank to the Bank of Louisville for collection. It was transmitted by the Louisville bank to the Knoxville bank, was received by the latter and was subsequently returned unpaid. The cashier of the Knoxville bank delivered the bill to a notary public in good repute at the time, who failed to protest it, by

reason of which the right of action against the drawer was lost. The Louisville bank paid the amount of the bill to the New York bank, and then brought suit to recover against the Knoxville bank, and failed.   It was held that " where a bank receives a bill of exchange for collection payable at a distant place, its liability is discharged by transmitting the same in due time to a suitable and responsible bank or other agent at the same place of payment, and in such case the principal's assent to the employment of a sub-agent is implied," and that " if a debt be lost by negligence of an agent to whom a bill of exchange is sent for collection, the principal or home bank (having complied with its duty, and not being liable to the holders) cannot, by voluntarily discharging the claim of the payee, maintain an action on the case for negligence against the sub-agent. Such right accrues only to the holder or payee of the bill under the circumstances."   That decision was not based upon any statute law, but upon the principles of the common law supposed to be applicable to the facts of the case.   It did not make or establish law, but expounded the law and furnished some evidence of what the law applicable to that case was — evidence which other courts might or might not take and receive as reliable and sufficient, and even the same court, upon fuller discussion and more mature consideration, might in some subsequent case refuse to take the same view of the law. There is no common law peculiar to Tennessee.   But the common law there is the same as that which prevails here and elsewhere, and the judicial expositions of the common law there do not bind the courts here.   The courts of this state and of other states and of the United States would follow the courts of that state in the construction of its statute law. But the courts of this state will follow its own precedents in the expounding of the general common law applicable to commercial transactions, and so it has been repeatedly held. (*Faulkner* v. *Hart*, 82 N. Y. 413 ; *Swift* v. *Tyson*, 16 Peters, 1; *Oates* v. *National Bank*, 100 U. S. 239 ; *Ray* v. *Western Penn. Natural Gas Co.*, 138 Penn. St. 576.)   We must,

therefore, hold that the obligation resting upon the defendant was that which the principles of the common law as expressed by the courts of this state placed upon it.

If it be said that the contract between these parties was made in view of the common law, then we must hold that it was the common law as expounded here.

But it cannot be maintained that the contract between these parties was a Tennessee contract. It is by no means clear even that it can be held that the contract was made there. It does not certainly appear where it was made. It cannot be said that a new contract was made every time a piece of paper was sent by the plaintiff to the defendant for collection. There was a general contract between the parties which was either created by some negotiation or which grew out of the course of business between them, that the defendant should collect the paper sent to it for the compensation to be allowed. If that contract was made by correspondence, the plaintiff making a proposition by mail and the defendant accepting it by mail, then, when the acceptance was put in the mail at Memphis, the contract was complete and had its inception there. If the proposition came from the defendant and was accepted in the same way in New York, then it would have to be treated as made in New York. In the absence of more proof than we have here it cannot be assumed that this contract was made in Tennessee. Nor is this to be regarded as a Tennessee contract for the reason that it was to be performed there; so that the defendant can claim that its obligations and interpretation is to be governed by Tennessee law. We cannot perceive how any substantial part of the contract was to be performed in Tennessee. The defendant was to collect this draft in Texas, and pay its proceeds, less its compensation, to the plaintiff in New York, and so the contract was to be performed in Texas and New York.

Adams & Leonard collected the draft for the defendant in Texas and sent it their own draft on Jemison & Co. This draft the defendant sent to the First National Bank of New York for collection and credit. If the draft had been paid

then the defendant would have had credit for the amount with that bank, and would probably have sent its own draft on that bank to the plaintiff for the amount of the collected draft, less its compensation, and that bank would have paid that draft on presentation, and thus the proceeds of the collected draft would finally have reached the plaintiff, and the obligation of the defendant would then, and not until then, have been fully discharged. So, always, the defendant having collected a draft sent to it by the plaintiff and received the proceeds thereof, would, in the ordinary course of business, discharge its obligation to the plaintiff by payment through its corresponding bank in New York. Therefore, we think it is quite clear that this contract cannot in any view be treated as a Tennessee contract, subject in any way to the law of that state.

Our conclusion, therefore, is that the order of the General Term should be reversed and the judgment entered upon the verdict affirmed, with costs.

All concur.

Judgment accordingly.