HENRY P. KIRKHAM, Appellant, *v.* THE BANK OF AMERICA, Respondent.

*Payment of a draft — liability of a bank in collecting a draft for a customer — effect of the acceptance, by its agent, of the drawee's draft upon a third person.*

Where the agent of a bank in which a draft has been deposited for collection surrenders the draft to the drawee and accepts a draft for its amount, drawn by the drawee upon a third person, the first-mentioned draft is thereby paid, the presumption being that the drawee's draft was accepted in payment of the draft received for collection; in any event, the collecting bank is bound either to return to its customer the draft received for collection, properly protested, so as to charge the drawer, or to pay him the money.

PATTERSON, J., dissented.

A bank which receives from a customer a draft for collection is liable for a loss occasioned by the acts of its correspondents or other agents selected by it to effect the collection.

The effect of a collecting bank in such a case having notified its customer that a draft left with it for collection was paid, and having credited the customer in its account with him with the amount thereof, and for a long time thereafter having acted upon the theory that the customer was entitled to regard the draft as paid, considered.

APPEAL by the plaintiff, Henry P. Kirkham, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 21st day of June, 1897, upon the decision of the court rendered after a trial at the New York Special Term.

*Ernest Luce,* for the appellant.

*Charles E. Rushmore,* for the respondent.

INGRAHAM, J. :

The complaint in this action alleges that during and previous to the month of November, 1890, plaintiff was a depositor of the defendant; that on or about the 25th day of October, 1890, one George K. Kirkham, the plaintiff's partner in business, received from one Blanchard a sight draft for the sum of $3,120, drawn by said Blanchard, as president of a corporation known as the Interstate Investment Company, upon the Bank of South Hutchinson, of South Hutchinson, Kans., a financial institution doing a general banking business; that the said draft was indorsed payable to this plaintiff, or to his order, and delivered to him by said George K. Kirkham, and deposited by plaintiff with the defendant for collection, and the amount of said draft was thereupon entered by the defendant in the plaintiff's pass book as a draft deposited for collection; that thereupon the defendant forwarded the said draft to its agent and correspondent, the Boatmen's Bank of St. Louis, an incorporated financial institution doing a general banking business at St. Louis, Mo., which in turn forwarded the draft to its agent and correspondent, the First National Bank of Hutchinson, Kans.; that the said draft was presented by the said First National Bank of Hutchinson to the Bank of South Hutchinson, whereon it was drawn, and was accepted by it; that thereupon the said First National Bank of

enforced to protect the estate from dangers resulting from unreliability of memory of conversations long since passed. To bring a case within the rule admitting parol evidence to complete an entire agreement of which a writing is only a part the writing must appear on inspection to be an incomplete contract. (*Case* v. *Phœnix B. Co.,* 134 N. Y. 78; *Thomas* v. *Scutt, supra.*) The reverse of that appears here. The obligation of a landlord to repair rests solely upon express covenant. (*Witty* v. *Matthews,* 52 N. Y. 512.) The lease, which is one the statute requires to be in writing, appears to have been carefully drawn, and was executed with every formality. It contains mutual covenants, and there is no apparent reason why every other promise should have been put in and this one left out. In *The Mayor* v. *Price* (5 Sandf. 542) the tenant undertook in like manner to prove that the landlord, contemporaneously with the execution of the lease, agreed to make certain repairs, and the court (at p. 550) said: "The lease is an instrument apparently perfect in itself, and purports to contain the agreement of each party. There are no ambiguities in the terms of the lease, requiring explanations to make it

Hutchinson surrendered the said draft to the said Bank of South Hutchinson and consented to receive, and did receive, payment of the said draft, not in cash, but by a certain demand check, drawn by the said Bank of South Hutchinson to the order of the Boatmen's Bank upon the Merchants' Exchange National Bank of the city of New York for the amount of said draft, less the then current rate of exchange on New York; that on or about the 3d day of November, 1890, the defendant notified the plaintiff that the said draft had been paid, and thereupon the defendant entered the amount of the said draft in the pass book of the plaintiff as a cash deposit item and as an amount on deposit with it to the credit of the plaintiff; that the check, drawn by the Bank of South Hutchinson on the Merchants' Exchange National Bank of the city of

intelligible.   In such a case it cannot be shown that there was a promise of either party different from or in addition to those contained in the executed contract." To the same effect are *Mayer* v. *Moller* (1 Hilt. 491); *Howard* v. *Thomas* (12 Ohio St. 201).   In *Post* v. *Vetter* (2 E. D. Smith, 248) the same principle is reiterated, with the qualification that such a promise made during the term, founded on a new consideration, may be proved.   The cases relied upon by the defendant are distinguishable either by the fact that they refer to agreements not required to be in writing or to a different state of facts.   In *Chapin* v. *Dobson* (78 N. Y. 74) the plaintiff was allowed to prove a warranty on a sale as collateral to the principal contract.   In *Clenighan* v. *McFarland* (11 N. Y. Supp. 719) the oral agreement was to put the premises in repair before the commencement of the term, and as a condition precedent to the operation of the lease.   So, in *Mann* v. *Nunn* (43 L. J. C. L. [N. S.] 241), the agreement was to put an unfinished house in a state fit for habitation before the commencement of the term.   In the *Clenighan* case the court recognizes the distinction by holding that, if the agreement had been to make repairs during the term, proof of the oral agreement would have been inadmissible, and so in the other cases the promise held to be collateral was to do acts antecedent to the operation of the demise.   When the statute requires the terms of a contract to be in writing, neither party will be permitted to show that it was other or different from what is expressed.   (*Routledge* v. *Worthington Co.*, 119 N. Y. 592.)   It is a task to reconcile the cases and get at their distinguishing features, for the question of what constitutes a collateral undertaking is necessarily close, and requires the greatest care in enforcing one rule that another equally important to the administration of justice may not be impaired. If the answer had alleged that the repairs were to be made antecedent to the term, and that their performance had been postponed at the request of the landlord until after it had commenced, there might have been force in the defendant's contention that the promise was collateral to the lease.   For these reasons the oral evidence was properly excluded, and the plaintiffs are entitled to judgment for $1,194.48.

New York, was forwarded to the defendant, and when received it was presented for payment to the said Merchants' Exchange National Bank, and payment was refused on the ground that there were not sufficient funds on deposit to the credit of the Bank of South Hutchinson, and that subsequently the defendant canceled the credit given to the plaintiff for the said draft and refused to pay the amount thereof.

For a second cause of action the plaintiff realleged the facts before stated, and alleged that the defendant had failed to return the check drawn by the Bank of South Hutchinson upon the Merchants' Exchange National Bank of New York, and to demand the draft deposited by the plaintiff with the defendant, and had failed and refused to have the said draft protested, or to deliver to the plaintiff the said draft so deposited with the defendant by the plaintiff.

The facts alleged in the complaint before referred to were either admitted by the answer or proved upon the trial. The plaintiff testified that one Blanchard was indebted under a guaranty to Mr. George K. Kirkham, and that he drew a draft as president of the Interstate Investment Company upon this South Hutchinson bank, and gave it in payment of that indebtedness to the plaintiff, who was then acting as agent and attorney in fact for George K. Kirkham, payee in the draft; that the plaintiff, acting under that power of attorney, indorsed the draft and took it personally to the Bank of America, and deposited it in the Bank of America; that it received it, and plaintiff asked the cashier if he would place it to his credit; that the cashier said no, he could not do that, but that he would notify the plaintiff when the draft was collected, and then would place it to the plaintiff's credit. On November third a postal card came to the plaintiff from the bank signed by the cashier, in which he told the plaintiff to bring his pass book to the bank to have the amount of this draft placed to his credit. Upon taking the pass book to the Bank of America it placed this amount to his credit. On the eighth or ninth of November, subsequently, the defendant informed the plaintiff that the check upon the Merchants' Exchange National Bank of New York, which had been sent to them as the check given in payment of the draft, was unpaid, as the New York bank upon which it was drawn had refused to pay it, and nothing was then said about

canceling the credit, the plaintiff merely promising that he would see the drawee of the draft deposited with the defendant, and assist the defendant in any way that he could. Subsequently several letters passed between the plaintiff and the defendant, the first of which was dated November 11, 1890, from the defendant to the plaintiff, in which the defendant requested the plaintiff to call upon the defendant with reference to the collection of this draft. Subsequently plaintiff wrote defendant that Blanchard had informed him that a remittance would be made to pay the drafts on New York received by the defendant or its agents. A letter of November eighteenth from the defendant to the plaintiff stated that no remittance had been received by the New York bank to pay the draft of the Bank of South Hutchinson, Kans., and continued: "We are anxious to have a satisfactory adjustment of this matter made at an early date and beg to request your further efforts in whatever direction necessary to protect our friends in St. Louis." It is quite apparent that up to this time no claim was made that the plaintiff was responsible in any way for the failure of the Missouri bank to collect the draft or that the defendant had any right to cancel the credit that it had given to him as upon payment of the draft deposited for collection. The first notice that any such claim was made was contained in a letter of November 25, 1890, from the defendant to the plaintiff, whereby the plaintiff was informed that "we shall hold against your account the sum of $3,120, the amount of a certain check made by Ben Blanchard and drawn on the Bank of South Hutchinson, Kansas." On the same day the plaintiff replied to that letter that defendant had no right to do this and protested against its doing it, stating that he would hold the bank responsible. On the same day the plaintiff wrote to the defendant protesting against their refusing to pay a check of $2,500 upon his account with the defendant's bank, and stating that he intended to hold the bank responsible for the loss sustained. In answer to that the defendant requested that any further communication that the plaintiff had to make be made to its counsel. Subsequently, on November twenty-sixth, the plaintiff made a demand for the amount of the balance in the defendant's bank, including the credit given upon this draft, which demand was refused. There was also introduced in evidence a letter written by

Blanchard to the defendant dated November 20, 1890, which contained a request to the defendant to have the Boatmen's Bank wait eight or ten days before proceeding against the Bank of South Hutchinson upon the draft given to it, and a promise by Blanchard that he would raise the money and pay the draft. It further appeared that upon the books of the defendant bank there was a credit to the plaintiff of this Kansas draft of $3,120, and subsequently a debit " Credited in error, Nov. 3d, '90, $3,120."

For the defendant it was proved that it was the custom of banks in the United States, when a draft is sent to a bank outside of the city of New York from a New York city bank for collection, for the drawee bank to pay that draft upon itself by what is called a return exchange upon New York; that is, the drawee bank gives in payment of the draft drawn upon it a draft upon its New York correspondent for the amount of the draft; that in some instances such draft or check is a draft or check of the drawee bank, in other instances, of some other institution, and that the New York exchange is generally drawn to the order of the collecting agent. There was no proof but that the Bank of South Hutchinson was solvent or that it would not have responded to a demand on it for the amount of its draft on New York which was unpaid.

It will thus be seen that the main facts are conceded. The plaintiff deposited a draft with the defendant for collection. The defendant accepted the draft for collection, and thereby assumed the responsibility of a collecting agent to the plaintiff. It sent this draft to its agent in Missouri, which adjoins the State of Kansas, where the drawee was located, for collection. The draft was presented to the drawee for that purpose; was delivered to the drawee and the defendant's agent accepted as payment a sight draft of the drawee upon its correspondent in New York; and, subsequently, upon receipt of information from its agent that the draft had been paid, the defendant credited the plaintiff with the proceeds of the draft and notified the plaintiff of such credit. The question is whether this defendant is authorized to repudiate such credit, and to refuse to recognize this draft so deposited for collection as paid, without returning the draft so deposited properly protested, so as to charge the drawer. It must be conceded here that, upon the credit given by the defendant to the

plaintiff, the defendant became indebted to the plaintiff to the amount of that deposit. It undertook to collect for the plaintiff this draft upon the Kansas bank. It forwarded it to its agent for that purpose; delivered such draft to the drawee and accepted in payment of the draft the drawee's draft upon New York, and adopted this as a payment of the draft deposited with it for collection. This certainly, as between the defendant and the drawee of the draft deposited by the plaintiff, was a payment of the draft.

The legal obligation assumed by a bank receiving from a customer a draft drawn by a third party for collection has been much discussed, and, where there is no express agreement, has resulted in considerable difference of opinion. It seems, however, to be now well settled in this State by repeated adjudications of the Court of Appeals. It was the duty of the defendant to present the draft to the bank upon which it is drawn for payment (*Indig* v. *National City Bank,* 80 N. Y. 103), and it is liable for a loss occasioned by the acts of its correspondents or other agents selected by it to effect the collection. "In such a case the collecting bank assumes the obligation to collect and pay over, or remit the money due upon the paper, and the agents it employs to effect the collection, whether they be in its own banking house or at some distant place, are its agents, and in no sense the agents of the owner of the paper. Because they are its agents, it is responsible for their misconduct, neglect or other default." (*St. Nicholas Bank* v. *S. N. Bank,* 128 N. Y. 30.) This defendant then assumed this obligation and sent this draft to its agent, the Boatmen's Bank at St. Louis; and the Boatmen's Bank forwarded the draft to its agent at Hutchinson. That agent at Hutchinson presented the draft to the drawee, in performance of its duty, and demanded payment. At that time the drawee of the draft was under no legal obligation to either the plaintiff or the defendant or the defendant's agent to pay the draft. If it had refused to pay, no cause of action would have existed in favor of either against the Bank of South Hutchinson. That bank, the drawee of the draft, however, assumed to the defendant or its agents the obligation to pay that draft, and in pursuance of such obligation it gave its sight draft on New York payable to the order of the Boatmen's Bank of St. Louis, and that was accepted by the agent, the Boatmen's Bank, in lieu of or as a means of payment of the draft.

It will be noticed here that the inception of any liability of this Bank of South Hutchinson, either to the plaintiff or to the defendant or its agents was, by the delivery of this draft upon New York, as a payment of the draft upon it. It agreed to honor the draft, and gave to the defendant's agent its draft on New York, and having given that draft on New York, it became liable to pay that draft in case its correspondent in New York failed or refused to pay it; and the defendant or its agent, by the acceptance of this draft on New York, thus obtained an obligation which, but for such acceptance it would not have had, namely, the liability of the Bank of South Hutchinson to pay the amount of the draft. In consideration of such obligation the defendant's agent delivered to the Bank of South Hutchinson the draft drawn on it, which the Bank of South Hutchinson accepted and retained. By that transaction the draft drawn on the Bank of South Hutchinson, and which had been received by the defendant for collection, was paid. No right of action then existed as against the drawer of that draft; certainly not until the defendant or its agent had in some way repudiated the payment or returned the obligation which it had received from the Bank of South Hutchinson, and demanded back the draft which it had presented for payment and in the payment of which it had accepted the obligations of the Bank of South Hutchinson.

The question as to the effect of a receipt by a creditor of a check or draft of a debtor in payment of a debt has been much discussed, but it seems to be now settled that the receipt of such a check or draft is not a payment of the debt unless there is an express agreement to that effect, the burden being upon the debtor to prove that agreement. But in such a case, where the check or draft is given upon the incurring of the obligation, it is at least *prima facie* a conditional payment. (Story Prom. Notes, § 104; 2 Pars. Notes & Bills, 157; Dan. Neg. Inst. § 1261.) It seems also to be settled that where, at the time of the incurring of an obligation, the debtor delivers to the creditor a note or bill of a third person for the indebtedness, the presumption is that the creditor takes it in payment. (*Noel* v. *Murray*, 13 N. Y. 171.) In this case, therefore, the defendant's agent having accepted this draft upon New York, upon presentation of the draft upon the South Hutchinson bank, the presumption is that it was received as payment of the draft, and as

there was no evidence to show a contrary intent or another agreement between the parties to that transaction, the draft drawn upon the South Hutchinson bank must be presumed to have been paid. This presumption is absolute in the absence of any repudiation of such agreement by the defendant or its agent by a notice to the South Hutchinson bank of such repudiation, and of a tender to the South Hutchinson bank of its draft on New York with a demand from it for the draft which had been delivered to it, and for the payment of which the draft on New York had been accepted. The draft thus deposited with the defendant for collection having been paid, the obligation of the defendant to the plaintiff is clear. The defendant was bound to pay to the plaintiff the amount of that draft. The plaintiff in this case had nothing to do with the method adopted by the defendant or its agent to secure such a payment, or as to the manner in which the defendant received such payment. The defendant could accept what it pleased in payment of the draft, but upon the draft being paid, it was bound to pay to the plaintiff the amount of the draft, not the specific bills or money, or other obligation which the defendant had accepted for such a payment.

It seems to us, therefore, that the defendant was liable to the plaintiff for the amount of that draft which it had collected from the Bank of South Hutchinson, irrespective of what its agents had accepted as such payment from the Bank of South Hutchinson. This view is entirely consistent with the decision of the Court of Appeals in the case of *Indig v. National City Bank* (80 N. Y. 103). There the defendant, having received for collection a note payable at the Bank of Lowville, in pursuance of its duty to present it to that bank for payment, sent it by mail directly to the bank where it was payable. It appeared that that was the ordinary method of transacting such business, and that the defendant was justified in adopting the ordinary mode, and it was held that, by thus transmitting the note to the bank where it was payable, the defendant did not constitute the Lowville bank its agent and thus was not responsible for its failure to pay. The opinion of Judge RAPALLO in that case does not appear to have been concurred in by a majority of the court. Judges FOLGER and ANDREWS did concur in that opinion. CHURCH, Ch. J., concurred on the question of damages, and MILLER,

Earl and Danforth, JJ., dissented. A somewhat similar question was presented to the court in the case of *Briggs* v. *Cent. National Bank* (89 N. Y. 184), where Judge Rapallo, who had written the opinion in the *Indig* case, writes the opinion of the court. This opinion was concurred in by all the judges. In speaking of the *Indig* case the court said: "The point of the decision is that the mere act of presenting the paper for payment by mail, instead of employing a messenger to present it, does not constitute the drawee agent of the sender to receive or hold the proceeds." It was held that that case did not apply to the case then before the court, for the reason that it appeared that the drawee was the agent of the defendant, the collecting bank, and that where the drawee was such agent, and where the collecting bank sent the note to such agent and the amount thereof was credited to the defendant in its collection account, the drawee of the check had the right to discharge the drawer and substitute itself as a debtor to the defendant for the amount; that it did so, and that the defendant must be regarded as having accepted the responsibility of the drawee upon its credit in the collection account in payment of the check. This decision seems to apply to the case at bar. Here the defendant or its agent did accept the responsibility of the Bank of South Hutchinson; did discharge the drawer of the draft deposited with the defendant for collection, and did substitute the Bank of South Hutchinson as its debtor for the amount of that draft. In the case of *St. Nicholas Bank* v. *S. N. Bank* (128 N. Y. 32), in speaking of the *Indig* case, it was said that the defendant there would have been held liable if the Lowville bank had been its agent for the collection of the note.

The view before expressed, that the delivery of this draft to the Bank of South Hutchinson and the receipt by the defendant's agent of this draft upon New York was a payment of that draft, is amply sustained by the authorities. In the case of *People ex rel. P. C. Savings Bank* v. *Cromwell* (102 N. Y. 482) the court says: "If upon presentation of a check or order such agent or bank should refuse payment, the debt remains unpaid, but if the creditor accepts anything other than legal currency in payment, the debt is discharged. The authority of the depositary is simple, and limited to the act of making payment, and if the creditor goes further and deals with it for any other transaction than that of receiving payment, he does

so upon his own responsibility, and must bear the consequent loss, if any, of such a transaction." And it was there held that upon presentation of coupons calling for the payment of a sum of money by the creditor to the bank of deposit which paid such coupons for the obligor, the acceptance by the creditor of a check of the banking house upon New York for the amount of the coupons was a payment of the coupons and discharged the obligor.

The case of *First Nat. Bank* v. *Fourth Nat. Bank* (77 N. Y. 323) was an action brought to recover damages alleged to have been occasioned by the negligence of the defendant in the performance of its duty as agent in collecting a draft sent to it for that purpose. The draft was received by the defendant on the morning of March twenty-sixth, and was on the same morning presented to the drawee for payment. Upon such presentation it received from the drawee its check for the amount on the Third National Bank of New York, and the draft was delivered to it. The defendant did not present the check to the bank for payment on that day, but it was sent through the clearing house and presented for payment on the next day, the twenty-seventh. The drawee failed on that day, and the bank refused to pay the check. The defendant then took the check, and on the same day returned it to the drawee, and received back the draft for which it had been given, and then formally demanded payment of the draft, and caused the same to be protested for non-payment; and on the next day, March twenty-eighth, due notice of such non-payment was served by mail upon the plaintiff. It was held that, upon these facts, sufficient was done to charge the drawer of the draft, but that the mere fact of preserving the liability of the drawer upon the draft was not the performance of the whole duty of the collecting agent to its principal; that a collecting agent must so act as to charge all the parties to the paper and will become liable for a loss occasioned by its negligence.

In the case of *Smith* v. *Miller* (43 N. Y. 171), which was again before the Court of Appeals (52 id. 545), it was expressly held that to preserve recourse to the drawers of the draft the plaintiff should, when the check given in payment thereof was dishonored, have demanded back the draft and again presented it for payment, and in case of refusal, given notice of such demand and refusal to the drawers, and that the fact that the drawees were insolvent was no

excuse for such neglect to protest the draft and give notice thereof to the drawer; and it was held that the *laches* of the plaintiff in not again demanding payment of the draft when the check was returned, was sufficient to discharge the liability of the defendant as drawer of the draft, and to extinguish the debt for which the draft was given. (See, also, the case of *Anderson* v. *Gill*, 25 L. R. A. 200, and note, where the cases are reviewed.)

The Supreme Court of Pennsylvania states the rule to be as follows: "It is safe to say, as a general rule, that when a bank receives a check from one of its depositors for collection, it must return him the check or the money. It is also equally clear that if the collecting bank surrenders the check to the bank upon which it is drawn, and accepts a cashier's check, or other obligation in lieu thereof, its liability to its depositor is fixed — as much so as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money." (*Fifth Nat. Bank of Pittsburgh* v. *Ashworth*, 2 L. R. A. 493.) The authority cited in the opinion and in a note to the case would seem to sustain the proposition thus broadly stated.

It is sufficient for the decision of this case to sustain the first proposition, that the defendant was bound to return to the plaintiff either the draft which it had received for collection or the money. It credited him with the money, and it thus became indebted to him for that amount. To justify them in canceling that credit or refusing to pay on demand, they were at least bound to deliver to him the draft properly protested, so as to charge the drawer; and, in the absence of such a return of the draft, they were liable for the money. It was proved without contradiction that the plaintiff demanded the return of the draft deposited with the defendant for collection, and that the defendant failed to comply with that demand. The acts of the defendant, after it had knowledge of the fact that the draft upon New York which it had received from the South Hutchinson bank had not been paid, clearly recognized its obligation to the plaintiff. It again and again requested the plaintiff to endeavor to induce the Bank of South Hutchinson to provide funds to pay the draft upon New York, and the plaintiff did make such endeavor. During all this time the proceeds of the draft deposited with the defendant for

collection were standing to the credit of the plaintiff, and no attempt
was made by the defendant, during such negotiations, to cancel such
credit; and as late as November the defendant wrote the plaintiff a
letter in which it said: "We are anxious to have a satisfactory
adjustment of this matter made at an early date, and beg to request
your further efforts in whatever direction necessary to protect our
friends in St. Louis." Subsequently, on November twentieth, the
drawer of the draft upon the South Hutchinson bank wrote to the
defendant requesting them to hold on to the draft from the Bank of
South Hutchinson, Kans., stating that if it allowed the Boatmen's
Bank to close out the Bank of South Hutchinson, the defendant
would not get the money from it under some months, and that
the drawer of the draft would not get his money, over $12,000,
from them either; "while if you will request the Boatmen's Bank
to simply wait eight or ten days, I will raise the money and pay it,
and the bank will come out all right and soon pay me." And it
was not until November twenty-fifth that the defendant gave the
formal notice to the plaintiff that the credit given to him upon the
draft deposited with the defendant for collection would be canceled.
The plaintiff at once protested against such a course, stating that
the defendant had no right to do this, in answer to which the defend-
ant wrote to the plaintiff regretting that the plaintiff had placed the
defendant in a position that had caused so much unpleasantness, and
requesting the plaintiff to make any further communication that he had
to make with its counsel. During all this time there is no evidence
that the defendant took any steps to rescind the payment of the
draft deposited with it for collection, or to procure it from the Bank
of South Hutchinson and deliver it to the plaintiff, or made any claim
that it was not responsible to the plaintiff. It neither offered to
return it in its answer, nor did it tender it to the plaintiff upon the
trial. Nothing that the plaintiff did induced the defendant to refrain
from repossessing itself of the draft which it had surrendered to the
Bank of South Hutchinson. On the contrary, what the plaintiff did
was at the request of the bank to relieve it from the liability which
it admitted it had incurred by accepting this draft on New York
in payment instead of money. The burden was upon the defend-
ant of showing that it had repudiated this payment of the draft
deposited with it for collection, as the acceptance of the draft created

at least a presumption of payment, and the plaintiff was entitled to stand upon such presumption.

We think, therefore, that upon the facts as proved the defendant was liable to the plaintiff for the amount of this draft deposited with it for collection.

Some criticism is made upon the plaintiff's complaint, on the ground that it is not sufficient to sustain a cause of action to recover the proceeds of this draft as paid. The complaint, however, alleges all the facts necessary to sustain the judgment, and expressly alleges that the defendant's agents did receive the draft of the Bank of South Hutchinson upon New York in payment of the draft deposited with it for collection; and while there are many immaterial facts alleged in the complaint, and the draftsman appears to have had a rather misty idea as to the ground upon which he based his cause of action, the facts necessary to make the defendant liable upon the ground before indicated are alleged, and these facts were either admitted by the answer or proved without contradiction upon the trial.

The judgment is reversed and a new trial ordered, with costs to the appellant to abide the event.

BARRETT and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., concurred in result; PATTERSON, J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide the event.