GERMAN NAT. BANK OF DENVER V. BURNS.

12   539
Case 2
20a  535

1. DUTY OF COLLECTING BANK.— When a bank receives for collection from a customer a certificate of deposit drawn by another bank located at a distant place, it is the duty of the collecting bank to send the certificate promptly to some suitable agent to be presented for payment.
2. SUITABLE AGENT, WHO?— Such suitable agent must, from the nature of the case, be some one other than the party who is to make the payment.
3. NEGLIGENCE IN SELECTING AGENT.— Sending the certificate direct to the bank primarily liable for the payment thereof is negligence *per se,* and if the certificate or the proceeds thereof are lost in consequence of such negligence, the collecting bank is liable to its customer therefor.
4. POSTING LETTER EVIDENCE OF ITS RECEPTION.— The depositing of a letter in the postoffice properly stamped and addressed is *prima facie* evidence that the same was received in the ordinary course of the mails by the party addressed.

*Appeal from Superior Court of Denver.*

CHARLES BURNS, the plaintiff below, in January, 1884, deposited in the First National Bank of Leadville the sum of $3,300, and received from said bank its certificate of deposit, payable to said Burns, or his order, upon return of the certificate properly indorsed.   Plaintiff, then having a bank account with the German National Bank

of Denver, defendant below, indorsed and sent the certificate to said defendant bank, with a letter, as follows: "Leadville, Jan. 15, 1884.    W. I. Jenkins, Cashier German Nat. Bank — Dear Sir: I inclose to you a certificate of deposit for thirty-three hundred, indorsed to your bank.    Please credit my account with the same, and oblige, yours truly, CHARLES BURNS.    $3,300."

The defendant bank acknowledged the receipt of said certificate by a letter, as follows: "German National Bank.    Denver, Colo., Jan. 17, 1884.    Chas. Burns, Esq., Leadville — Dear Sir: Your favor of the 15th received, with inclosures, as stated.    You have credit, ——.    Yours, very truly, W. I. JENKINS, Cashier.    I inclose ——." ·

This letter was on a printed form, and the words, "You have credit," in print, were followed by a blank line, to be filled up if credit was actually given; otherwise not.    The defendant thereupon deposited a letter in the United States postoffice at Denver, containing said certificate of deposit, with two other items, duly addressed to the said First National Bank at Leadville, or to the president thereof, duly stamped, with notice printed on the envelope to return in five days to the defendant if not called for.    The letter was as follows: "The German National Bank.    Denver, Colo., Jan. 17, 1884.    F. W. De Walt, Esq., President, Leadville: I inclose for collection and credit, No. 51,262, Rice; protest, $800.63; you no protest, $3,300; you no protest, $3,092.    Yours truly, W. I. JENKINS, Cashier."

Not having received any response thereto on the 21st day of January, defendant sent inquiry by telegram, and on the same day received answer: "No such remittance received," signed "THE FIRST NATIONAL BANK;" whereupon defendant then reported the same to plaintiff by letter addressed to him at Leadville, directing him to go to the Leadville bank and get a duplicate certificate, which letter was not received by plaintiff until after the Leadville bank had failed.

The Leadville bank continued to meet its obligations until January 22, 1884, when it failed. The affairs of the bank were wound up by the receiver appointed by the comptroller. The president of the bank, who was its manager previous to and at the time of the failure, was convicted and sentenced to the penitentiary for unlawful acts in connection with said bank, and was there confined at the time this case was tried. The receiver and the teller of the bank gave their testimony, from which it appears that they had no knowledge of the certificate, nor of the two items sent with it; that the books of the bank showed the issuance of the certificate, but no entry of the receipt or payment thereof by the bank. It also appears from the evidence that there were two mails per day from Denver to Leadville, arriving at Leadville about twelve hours after leaving Denver; and that there were ample funds on hand in the Leadville bank, up to January 22, 1884, for the payment of said certificate; and that it would have been paid had it been presented to the paying teller of said bank and payment demanded thereon at any time prior to said day. Upon learning of the failure of the Leadville bank, plaintiff demanded that defendant should pay the amount of said certificate of deposit, which being refused he brought this action. The amended complaint states the cause of action in two ways: The first, upon the theory that defendant, according to its custom in such matters, had accepted the certificate as a deposit in favor of plaintiff, and had given or was bound to give him unconditional credit therefor; the second, upon the theory that defendant had received the certificate for collection, and that by reason of its negligence and want of care in that behalf plaintiff had lost the proceeds of said certificate. The answer denied the custom, the unconditional credit, alleged that it received the certificate for collection only, and traversed the allegation of negligence.

Messrs. PATTERSON & THOMAS, for appellant.

Mr. L. C. ROCKWELL, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The plaintiff, by letter, had requested defendant to credit his account with the amount of the certificate of deposit inclosed. The reply to this letter by its literal terms indicated compliance with this request, but the credit was not actually given; and the trial court held that the evidence under the circumstances did not warrant the plaintiff's claim to such unconditional credit, so the first cause of action was dismissed. The trial court seemed to consider plaintiff's letter transmitting the certificate of deposit as equivalent to a request from plaintiff to collect of the Leadville bank, and to credit plaintiff with the proceeds of the collection. This view was certainly favorable to defendant. Under such circumstances defendant was bound to use all reasonable diligence to protect the interests of plaintiff. Its duty was to send the certificate in due season to be promptly presented for payment. If there was negligence on the part of defendant in this behalf, and loss resulted to plaintiff in consequence thereof, plaintiff undoubtedly has a cause of action against defendant for such loss. Morse, Bank. 354.

Thus far the authorities are agreed; but in some respects they are in conflict upon this subject. Some courts have held that a bank undertaking the collection of commercial paper is responsible, not only for any loss occasioned by the negligence of its own immediate servants and agents, but also for the neglect or default of any intermediate agent or correspondent to whom it intrusts such paper for collection in the regular course of business; and that this responsibility continues notwithstanding the collecting bank has exercised all reasonable care and diligence in the selection of such intermediate agents.

Other decisions are to the effect that this responsibility extends only to collections to be made in the same place where the collecting bank is located, and that in case of a collection at a distant point the bank discharges its duty by sending the paper in due season to a competent and reliable agent with proper instructions.

Again, a distinction is made between an undertaking to collect commercial paper and an undertaking to transmit the same for collection. In the former case the undertaking extends through the whole course of proceedings, and includes all the steps necessary or incidental to the accomplishment of the object to be performed, and the collecting bank is held to answer for every neglect or default in the performance of its contract whereby its customer suffers loss, whether the negligence be that of its own immediate officers or agents or any sub-agent of its own selection; in the latter case the undertaking is to use all reasonable diligence in the selection of the agent to whom the paper is thus transmitted. 1 Daniel, Neg. Inst. § 341 *et seq.; Bank v. Bank,* 112 U. S. 276.

Counsel, with much research and learning, have discussed at length these apparently conflicting decisions, and yet we do not find it necessary in the determination of this case to attempt to harmonize, distinguish or select from among them with the view to declare the rule in this state in respect thereto. In this case defendant sent the certificate of deposit by mail direct to the maker thereof — to the bank issuing the same. Whether the letter of transmittal is to be regarded as an instruction to credit defendant with the amount of the certificate at the Leadville bank, or to remit to defendant the amount thereof, the risk was the same. Literally, the three letters above given, and the telegraphic reply by the Leadville bank above quoted, would seem to indicate that the forwarding of the certificate might have been intended as a "remittance" by defendant for "credit" on its own account at the Leadville bank, instead of a request to

pay and return the proceeds. If such was the intent of defendant by the course pursued, it would have been unconditionally liable to plaintiff if the certificate was received by the Leadville bank before its suspension. Morse, Bank. 364; *Taber v. Perrot*, 2 Gall. 565.

But we need not rely upon this construction of the correspondence; for, whether we regard the sending of the certificate to the Leadville bank as the selection of such bank as agent for the collection of the paper, or as a direct presentation of the paper for payment, as defendant's counsel contend, the danger of such course was the same in either case. Even if we can conceive of such an anomaly as one bank acting as the agent of another to make a collection against itself, it must be apparent that the selection of such an agent is not sanctioned by business-like prudence and discretion. How can the debtor be the proper agent of the creditor in the very matter of collecting the debt? His interests are all adverse to those of his principal. If the debtor is embarrassed, there is the temptation to delay; if wanting in integrity, there is the opportunity to destroy and deny the evidence of the indebtedness. The fact that the Leadville bank was a correspondent of the defendant to a limited extent does not alter the rule. Suppose an attorney receiving a promissory note for collection, executed by another attorney resident in a distant city, should send such note direct to the maker, asking him to undertake the collection thereof, and that in consequence of such course the collection should be lost, would it be any legal answer to his client for the first attorney to claim that the second attorney was his correspondent, to whom he had frequently sent collections, and that he was an attorney of good reputation and standing, financially and otherwise? As a matter of law such method of doing business cannot be upheld. It violates every rule of diligence. Even if we were to follow the rule that the collecting bank could relieve itself from liability

by sending the paper in due season to a suitable agent, with proper instructions, we feel constrained to hold, in the language of Mr. Justice Allison of the court of common pleas of Philadelphia, concurred in by the supreme courts of Pennsylvania and of Illinois, "that such suitable agent must, from the nature of the case, be some one other than the party who is to make the payment." *Bank v. Goodman*, 109 Pa. St. 428; *Bank v. Provision Co.* 117 Ill. 100.

Counsel for appellant cite two cases as bearing directly upon the question under consideration — *People v. Bank*, 78 N. Y. 269, and *Indig v. Bank*, 80 N. Y. 100. Upon a careful examination it will be found that in neither case was the bank to which the paper was sent the maker of such paper, nor primarily liable thereon. In each case the party to make the payment was a customer or depositor merely of the bank to which the paper was sent.

Again, the sending of the certificate by mail direct to the Leadville bank for payment is not equivalent to a direct presentation thereof at the counter by a party not identified in interest with the bank itself. In presenting a check or certificate of deposit at the counter in legal contemplation the holder does not give up the paper except as he then and there receives payment in hand. The surrender of the paper and the receipt of payment are regarded in law as simultaneous. Would it be considered diligent or prudent for an agent undertaking to collect negotiable paper to leave the paper at the counter with the president or cashier of the bank primarily liable to pay the same, and go away without receiving payment, merely directing a remittance of payment by mail or otherwise? We think not; and yet the opportunity for successfully evading or delaying payment in such a case would not be as great as in sending the paper direct to the bank by mail, expecting remittance by mail. The evidence fully shows that if defendant had selected some reliable third party to present the certificate to the Lead-

ville bank for payment in the usual manner of transacting such business at any time before January 22, 1884, the same would have been paid. Under the circumstances, we think there was no error in taking the question of negligence from the jury.

The question remaining to be considered is, Was the negligence of defendant in sending the certificate direct to the Leadville bank the proximate cause of plaintiff's loss? The trial court submitted this as a question of fact to the jury, substantially as follows: Was the certificate of deposit received by the Leadville bank at a time when such bank had sufficient funds to pay the same? The jury were instructed to the effect that, if this question should be determined in the affirmative, plaintiff was entitled to recover; otherwise not. The jury were further instructed that the burden of proving this issue was upon the plaintiff; that the depositing of the letter in the post-office, properly addressed and stamped, was *prima facie* evidence only that the same was received in the ordinary course of the mails by the Leadville bank; and that the other evidence and circumstances of the case must be considered in determining whether or not the letter was so received. We see no error in the submission of the case to the jury in this manner; the instructions given were as favorable to defendant as the law required; and the prayers for instructions by defendant were either erroneous or unnecessary. 1 Greenl. Ev. § 40; *Huntley v. Whittier*, 105 Mass. 391; *Wall's Case*, 5 Moak, Eng. R. 686.

The trial court decided in effect, though not in words, that defendant acted at its peril in sending the certificate of deposit by mail direct to the bank primarily liable thereon for payment; in other words, that such a course was negligence *per se*. Whether such negligence was the proximate cause of plaintiff's loss depended upon whether the certificate was received by the Leadville bank at a time when the bank was paying such paper

on presentation at its counter in the regular course of business. There was no conflict as to the time when the bank suspended payment. Whether the letter reached there before the time of such suspension was the one doubtful question of fact in the case. It cannot be said there was no evidence upon this question, for competent testimony from several witnesses was introduced, though the defaulting president's testimony was not secured. The weight of this testimony was for the jury; and the jury was the proper tribunal to resolve the doubt and determine the question. This question of fact having been determined in favor of plaintiff, and the record being free from substantial error of law, the court cannot properly disturb the verdict. The judgment of the superior court is accordingly affirmed.

*Affirmed.*