MINNEAPOLIS SASH & DOOR COMPANY v. METROPOLITAN BANK.

May 2, 1899.

Nos. 11,501—(62).

#### Bank—Selecting Agent to Collect Check for Depositor.

For the purposes of collecting a check or draft deposited or left for collection, a bank must employ a suitable subagent, if an agent be necessary. It must not transmit checks or drafts directly to the bank or party by whom payment is to be made. No party upon whom rests the obligation to pay upon presentation can be deemed a suitable agent, in contemplation of law, to enforce, on behalf of another, a claim against itself.

#### Same—Notice of Limitation of Liability.

This rule is not affected by notice to a depositor that the bank attempting a collection limits its liability so that it acts as agent only for the depositor, and in forwarding items for collection is only bound to select agents who are responsible according to its judgment and means of knowledge, and assumes no risk or responsibility on account of the omission, negligence, or failure of such agents.

#### Same—Custom of Banks no Excuse.

Nor will an established usage and custom existing among banks to send checks or drafts payable by other banks, at distant points, to the drawee directly, and by mail, in case there is no other bank of good standing in the same town, excuse or justify such a course of procedure. In case of loss through the bad conduct of the drawee, the sender of the check or draft must bear it.

Action in the district court for Hennepin county to recover $316.68 damages, by reason of defendant's negligence in failing to collect a check for that amount. The case was tried before Lancaster, J., whose finding of facts included the following, among others:

The plaintiff was a depositor in defendant bank; and, when plaintiff opened its account with defendant, it delivered to plaintiff a pass book on which was printed the following notice, to-wit:

"This bank, in receiving checks or drafts on deposit, or for collection, acts only as your agent, and, when forwarding items to other points, we select agents who are responsible according to our

judgment and means of knowledge, but we assume no risk or responsibility on account of their omissions, negligence or failure, should any occur."

All pass books thereafter issued to plaintiff bore the same notice. Plaintiff's attention had been called to said notice before July 29, 1896. There never was any conversation or agreement between them modifying the terms of said notice; plaintiff never instructed defendant to proceed in any exceptional way in collecting plaintiff's checks, drafts or commercial paper. On July 29, 1896, plaintiff deposited with defendant a check drawn by one J. K. Norton on the Mapleton Bank of Mapleton, Minnesota, for $316.68, payable to plaintiff's order, and then received the usual provisional or conditional credit on the books of the bank and on plaintiff's pass book. On the same day defendant sent the check by mail to said Mapleton Bank for collection and payment; said Mapleton Bank was the only bank at the village of Mapleton, and the only agency known to defendant for the collection of such commercial paper at such place, and was and always had been responsible, according to the judgment and means of knowledge of defendant; the usual and ordinary way in which defendant could collect said check without unusual and unnecessary expense was by sending it to said bank for collection; said bank was then reputed to be a perfectly safe and reliable banking institution; it was, and had been, the universal custom of banks, upon receiving on deposit or for collection a check or draft drawn on a bank which was the only bank at the place where such bank was situated, if such bank was reputed to be a safe and reliable institution, to send such check or draft direct by mail to such bank for collection; defendant had frequently so sent items for collection to said Mapleton Bank, and had always found it to be safe and trustworthy; when said Norton check was thus presented for payment to said Mapleton Bank, said Norton had on deposit with it, and subject to his order and check funds more than sufficient to pay said check; the presentment of said check was recognized by said Mapleton Bank, and payment was made as follows:

On August 5, 1896, defendant received by mail from said Mapleton Bank in payment of said check the draft of said Mapleton Bank

on National Citizens' Bank of Mankato, Minnesota, drawn to the order of defendant for $316.13, 55 cents having been deducted for exchange; said Mapleton Bank, at the time of receipt thereof by defendant, had on deposit with said National Citizens' Bank, subject to its order or draft, funds more than sufficient to pay said draft; it was, and had been, the universal custom of banks, in making collections from other banks, to accept in payment the draft of the bank drawn on, upon some other bank. On said August 5, 1896, immediately after receipt of said draft, defendant sent it to the Merchants National Bank of St. Paul, Minnesota, for collection; said Merchants National Bank was a regular correspondent of said National Citizens' Bank, keeping a regular account with it, and the only correspondent of said Mankato bank known to defendant, in St. Paul or Minneapolis; it was, and had been, the universal custom of banks in the two cities of St. Paul and Minneapolis, in making collections of such paper, drawn on an outside or "country" bank, when such outside bank kept a regular account with any bank in either city, and was a regular correspondent thereof, to send such paper for collection to such correspondent bank; said National Citizens' Bank and said Merchants National Bank were reputable institutions; according to the general usage of banks said draft was on said August 5, 1896, charged to said Merchants Bank on the collection register of defendant, and credited to it by said Merchants Bank; in the event of collection of such paper, the remitting bank would receive no further advices from the collecting bank, and only in case of failure to collect would there be any further correspondence with reference to such paper; after sending said draft to St. Paul defendant learned nothing further in regard to it till August 20, 1896, when it received notice from said Mankato bank of the dishonor and protest of said draft; said notice informed defendant that said draft had been duly protested on August 8, 1896, for the reason that on said day said Mapleton Bank had not sufficient funds in said Mankato bank; immediately after receipt of said notice defendant communicated the facts to plaintiff; on August 20, 1896, by reason of its dishonor and nonpayment, the draft was charged back to defendant on the books of the Merchants Bank, and was charged back to plaintiff by defendant, and plain-

tiff was so notified; the draft was returned to plaintiff September 9, 1896; and defendant had declined all responsibility for said draft, and that it was useless for plaintiff again to return it.    Said Mapleton Bank suspended payment August 15, 1896, and ever since had been insolvent.

At the time defendant forwarded said check to said Mapleton Bank, the United States Express Company had officers at Minneapolis and Mapleton, and was in the habit of receiving checks from banks in Minneapolis for collection on other banks out of the city, and defendant could have forwarded said check for collection through said company at an expense of from 50 to 75 cents.    Defendant made no inquiry as to why said Mapleton Bank did not remit by return mail and waited till August 5 before collecting said check.    Plaintiff had no notice or knowledge of the course of said check or said draft, or the steps taken concerning the collection of either, after depositing said check July 29, until August 20, 1896.

As conclusions of law, the court found that, in opening an account with defendant and becoming a regular customer, plaintiff assented to the terms and conditions of the said notice to customers, and that they became a valid and binding agreement between the parties; that each of the customs and usages set forth was valid and binding on the parties, that they contracted with reference thereto, and that defendant was not negligent, and was entitled to judgment.

From an order denying a motion to amend certain of the findings, and denying a motion for judgment notwithstanding the decision, or for a new trial, plaintiff appealed.    Reversed.

*Penney & McMillan*, for appellant.

In the absence of express authority, an agent to collect or receive payment can receive nothing but money in satisfaction of his principal's claim.    1 Am. & Eng. Enc. (2d Ed.) 1027; Story, Ag. (9th Ed.) § 98; Mechem, Ag. § 375; Trull v. Hammond, 71 Minn. 172; Hazlett v. Commercial, 132 Pa. St. 118; Fifth v. Ashworth, 123 Pa. St. 212; Merchants v. Goodman, 109 Pa. St. 422; Whitney v. Esson, 99 Mass. 308; Farwell v. Curtis, 7 Biss. 160; Marine Bank v. Fulton Bank,

2 Wall. 252; Ward v. Smith, 7 Wall. 447; Bank v. Union, 149 Ill. 343. By giving up the check and taking the draft, defendant made the draft its own, as between it and plaintiff. Whitney v. Esson, supra. The so-called customs or usages with regard to forwarding checks to the bank on which they were drawn, accepting drafts in payment, and the disposition thereof, were nothing more than habits or methods of transacting business adopted by the local bankers for their own convenience and economy. Even if valid, they are operative only in respect to those who have been shown to have had knowledge of them. Baxter v. Sherman, 73 Minn. 434; Dern v. Kellogg, 54 Neb. 560; Thompson v. Minneapolis & St. L. Ry. Co., 35 Minn. 428. There is no presumption that the usages of a particular trade or business are known to persons not engaged therein. 27 Am. & Eng. Enc. 750; Keavy v. Thuett, 47 Minn. 266; Nippolt v. Firemen's Ins. Co., 57 Minn. 275. In placing the check with defendant for collection, plaintiff did not assent by implication to a custom that defendant should be negligent. Dern v. Kellogg, supra. No custom as to presenting ordinary checks for payment, e. g. by mail, will relieve from presenting within a reasonable time. First v. Miller, 37 Neb. 500. A usage, in collecting drafts for nonresidents, to surrender the drafts to the drawees at maturity and to take their checks in settlement is unreasonable and invalid. 27 Am. & Eng. Enc. 768; Whitney v. Esson, supra. A custom is deemed unreasonable, if it tends to unsettle well-established rules, of law established for the protection of the rights of parties. Merchants Ins. Co. v. Prince, 50 Minn. 53; Globe M. Co. v. Minneapolis ·E. Co., 44 Minn. 153; Deering & Co. v. Kelso, 74 Minn. 41.

When defendant received the check for collection, there was an implied undertaking on its part to take all necessary steps to protect plaintiff's rights against the maker. Jagger v. National Ger. Am. Bank, 53 Minn. 386; West v. St. Paul Nat. Bank, 54 Minn. 466. It therefore undertook not to mail the check to the bank, but within a reasonable time to present it and demand payment. Cork v. Bacon, 45 Wis. 192; Western v. Sadilek, 50 Neb. 105; Wagner v. Crook, 167 Pa. St. 259; Anderson v. Rodgers, 53 Kan. 542; Industrial v. Weakley, 103 Ala. 458; National v. Weil, 141 Pa. 457; Grange v. Reigh, 93 Wis. 552; 2 Daniel, Neg. Ins. § 1590, et seq. If

defendant was willing to take the check without special stipulations, plaintiff was authorized to assume that it was able to collect and had the proper agent therefor. Drovers v. Anglo-American, 117 Ill. 100. Mailing the check direct to the bank was such negligence as to render defendant liable for the loss sustained thereby. 1 Daniel, Neg. Ins. § 328a; Merchants v. Goodman, supra; Drovers v. Anglo-American, supra; Anderson v. Rodgers, supra; First Nat. Bank v. Fourth Nat. Bank, 56 Fed. 967; First v. City, 12 Tex. Civ. App. 318; Farwell v. Curtis, supra; German v. Burns, 12 Colo. 539.

*John T. Baxter*, for respondent.

The pass book was admissible to show the contract. The implied contract might be varied by express agreement. 1 Morse, Banks, § 218; Allen v. Merchants, 22 Wend. 215; Wingate v. Mechanics, 10 Pa. St. 104; Heath v. Portsmouth, 46 N. H. 78; Schoenwald v. Metropolitan, 57 N. Y. 418; In re State Bank, 56 Minn. 119; South Park F. & M. Co. v. Chicago G. W. Ry. Co., 75 Minn. 186. It was not negligent to send the check direct to the bank. It had long been the usage of defendant bank, and plaintiff was bound by that usage. 1 Morse, Banks, §§ 28, 29; Mills v. U. S. Bank, 11 Wheat. 431. It was sanctioned by the general usage of banks. Proof of custom is evidence as to whether an act is negligent. Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193. The usages and customs of banks have been treated by the courts with especial consideration. Proof of their existence is generally admitted to vary old rules of law, and parties are held to have contracted with reference to them. Savings v. National, 98 Tenn. 337; Note on Banking Customs, 21 L. R. A. 440; President v. President, 1 Cush. 177; Warren v. Suffolk, 10 Cush. 582; Davis v. First, 118 Cal. 600; British v. Tibballs, 63 Iowa, 468. This usage was long since adopted by the London banks, and is sanctioned by the English courts. Heywood v. Pickering, L. R. 9 Q. B. 428; Prideaux v. Criddle, L. R. 4 Q. B. 455, 461. It is also sanctioned in New York. McIntosh v. Tyler, 47 Hun, 99; Indig v. National, 80 N. Y. 100; Briggs v. Central, 89 N. Y. 182; Shipsey v. Bowery, 59 N. Y. 485. It was within the terms of the agreement. The drawee bank became a subagent of plaintiff for purposes of presentment, notice of

dishonor, etc. Simonds v. Black River Ins. Co., Fed Cas. No. 12,874. See also Blakeslee v. Hewett, 76 Wis. 341; Mt. Pleasant v. McLeran, 26 Iowa, 306. Defendant had a right, and it was its duty, to be guided by its own experience with the Mapleton Bank. 1 Morse, Banks, § 432. Collection by express would have been unusual, and was never contemplated. Defendant would have been liable for any loss resulting from failure to follow the usual course. Id. § 243. The question of presentment is eliminated, for it resulted in no loss. Indig v. National, supra.

There was no negligence in receiving the draft on the Mankato bank. It was not accepted in payment, but was merely a step in the process of collection, and was the only method employed by banks in making collections one from another. Savings v. National, supra; British v. Tibballs, supra. See Russell v. Hankey, 6 T. R. 12; 1 Morse, Banks, § 23; Lawson, Usages & C. § 228; Story, Ag. (9th Ed.) § 98; Mechem, Ag. § 375. Defendant was never owner of the Mankato draft, nor was it negligent in handling it. Plaintiff was itself negligent. It was not necessary to plead the general usages and customs of banks. Lawson, Usages & C. § 112; Breen v. Moran, 51 Minn. 525.

COLLINS, J.

On the admitted facts in this case, the only question necessarily to be determined, in our opinion, is whether defendant bank, doing business at Minneapolis, was negligent when it sent by mail, and for collection, the Norton check directly to the bank of Mapleton, 117 miles distant, upon which bank the check was drawn; loss having resulted by reason of the adoption of this method of presenting the paper for payment. The defendant seeks to justify its procedure upon the ground that it had restricted its liability to its depositors, when collecting checks and drafts, by means of the notice printed upon its depositors' bank or pass books, of which notice plaintiff's secretary had actual knowledge; and also because of a well-settled usage and custom then prevailing in banks; and, further, because the same result would have ensued had another correspondent been selected.

1. Although the defendant had limited its liability so that when

receiving checks or drafts for collection, or on deposit, it acted as an agent only in forwarding these items to other points for collection, it was only bound to select agents who were responsible, according to its judgment and means of knowledge, and assumed no risk or responsibility on account of their omission or neglect or failure, defendant was obliged to exercise reasonable care and diligence in adopting a method of presenting the check in question to its drawee for payment, in selecting its agent. Now, can it be held that defendant exercised reasonable care when it sent the check by mail to the very party most interested against the payee and principal, thus placing such principal entirely in the hands of its adversary. Norton had ample funds on deposit when he drew the check, and also when the check reached the drawee, presumably on July 31, at the opening of business hours. It was important that it should speedily be presented for payment, in order to fix his liability in case of nonpayment. This was of the utmost importance to both payee and maker, in order that the interests of each might be protected. The interest of the drawee would naturally be to procrastinate, and possibly this would be its inclination. It seems to be settled by all of the authorities that,

"For the purposes of collection, the collecting bank must employ a suitable subagent. It must not transmit its checks or bills directly to the bank or party by whom payment is to be made, with the request that remittances be made therefor. It is considered that no firm, bank, corporation, or individual can be deemed a suitable agent, in contemplation of law, to enforce, in behalf of another, a claim against itself." 1 Daniel, Neg. Inst. § 328a; 3 Am. & Eng. Enc. (2d Ed.) 809; Drovers v. Anglo-American, 117 Ill. 100, 7 N. E. 601; Merchants v. Goodman, 109 Pa. St. 422, 2 Atl. 687; Wagner v. Crook, 167 Pa. St. 259, 31 Atl. 576; German v. Burns, 12 Colo. 539, 21 Pac. 714; Anderson v. Rodgers (Kan.) 27 L. R. A. 248, and note, in which the authorities are carefully considered.

The truth of the remark as to the unsuitability of the drawee of a check as the agent selected to enforce its collection, and what may be expected if the practice is upheld, is well illustrated by the facts now before us. As before stated, the check must, in due course of mail, have reached Mapleton on the morning of July 31. Had it been in the hands of a properly designated third party, it would

have been presented and paid that day. The proceeds would, if properly transmitted, have reached defendant on the morning of August 1 or 2. Even if the payment had then been made, as it finally was, in a check upon the Mankato bank, and defendant had pursued the course it did as to its collection, no loss would have resulted. But instead of accounting for the Norton check, so that defendant would receive the proceeds as early as August 2, the Mankato check was made out on August 4, and came to defendant's hands the next day. With sufficient funds in its hands to meet the check, the Mapleton bank postponed a remittance for three days, and then sent a check, which proved to be worthless when seasonably presented for payment.

2. We have stated the grounds upon which defendant attempts to justify. It did show that it was usual and customary for banks to send checks and drafts, payable by other banks at distant points, to the drawee direct, and by mail, provided there was no other bank of good standing in the same town, while plaintiff was allowed to prove that an express company, whose business it was to collect and transmit money, had offices in both places. We fail to see what possible effect upon a case of this kind the fact that the drawee is the only bank in good standing in the town can have upon the duty of a bank which undertakes a collection. Any reason for such a course is equally as sound where there are two or more banks in the town as where there happens to be but one. While the syllabus of one of the cases cited in support of counsel's proposition (Western v. Sadilek, 50 Neb. 105, 69 N. W. 765) may justify him, the opinion does not.

We cannot agree with counsel that the usage and custom here relied upon is a defense to the claim that defendant was negligent when forwarding this check to the Mapleton Bank for presentation and payment. As a general rule, usage and custom will not justify negligence. It may be admitted that such a course is frequently adopted, but it must be at the risk of the sender, who transmits the evidence of indebtedness upon which the right to demand payment depends, to the party who is to make the payment. Such a usage and custom is opposed to the policy of the law, unreasonable and invalid. It was so decided in Drovers v. Anglo-American and Mer-

chants v. Goodman, supra. Counsel for defendant has cited two cases from the English Law Reports and three from the New York Court of Appeals as authority upon this question. An examination of these cases will show that this exact question was not decided. See 27 L. R. A. 248, note, supra.

3. Counsel for defendant also urge that plaintiff ought not to recover, because the result would have been the same had another correspondent been selected to present the check. This assumes that a third party would have waited until August 4 for payment, and then would have accepted a check upon the Mankato bank as payment, which would have been transmitted to defendant August 5. Such an assumption reflects seriously upon the ordinary methods of bank officers, and is without foundation. Primarily, the loss to plaintiff grew out of the fact that defendant negligently selected an unsuitable party, the payee, to present the check, to compel payment, or, in case of refusal, to protect its rights, as against Norton, by due protest and notice of nonpayment. We need not discuss the further contention that payment of the Norton check could only be made in money.

The order refusing a new trial is reversed, and, on the findings of fact, judgment must be ordered in plaintiff's favor in the court below, unless such court, in its discretion, grants a new trial.

START, C. J. (dissenting).

I dissent. Under the undisputed evidence in this case, as to the universal custom of banks in collecting paper drawn upon a bank in good standing, which is the only bank at the place of its location, it cannot in my opinion be held, as a matter of law, negligence for the collecting bank to send the paper to the drawee bank for collection.