Milling Co. v. Bank.

.WINCHESTER MILLING CO. *v.* BANK OF WINCHESTER, *et al.**

(*Nashville.* December Term, 1907.)

1. **BANKS AND BANKING.** Duties of banks as collectors in successively handling the claim.

Each successive bank handling an item for collection is agent of the owner, and liable to him for the discharge of the duties incumbent upon collecting agents, and the several banks in the course of the chain of transmission are held responsible only for the selection of proper agents, and for their own diligence and propriety of action in respect of the collection. (*Post, p.* 233.)

Cases cited and approved: Bank v. Bank, 8 Bax., 101; Bank v. Cummings, 89 Tenn., 609.

2. **SAME.** Same. Collecting bank is liable to owner for loss in sending check to drawee bank for collection, though it be the only bank at the place.

The party who is to pay a check is not a suitable agent for its collection. A bank receiving a check for collection is negligent in sending the same directly to the drawee bank for collection, even though it is the only bank at the point of collection, and must respond to the owner for all loss occurring as the result of such a selection. (*Post, pp.* 234-246.)

Cases cited and approved: Givan v. Bank (Tenn. Chy. App.), 52 S. W., 923, 47 L. R. A., 270, and numerous cases in other jurisdictions reviewed, approved, disapproved, or distinguished will be found on pages 235-245 of the opinion.

———

*As to negligence in sending checks directly to drawee bank, see note to Anderson v. Rodgers (Kan.), 27 L. R. A., 248, and note to Farley Nat. Bank v. Pollak & Bernheimer (Ala.), 2 L. R. A. (N. S.), 194.

120 Tenn—15

3. SAME. Same. Same. Drawer's debt is discharged by drawee's acceptance and payment of his check by its draft, and cancellation and surrender of his check charged to him, when.

Where a check, given by a debtor on a certain bank in payment of his debt, was, by another bank acting as collector for the creditor and payee, forwarded, for collection or payment, to the drawee bank, in which there was more than enough money on deposit to the credit of the drawer at the time the check arrived there to pay the same, whereupon the drawee bank drew its draft upon another bank for the amount of the check, and forwarded the same to the collecting bank, and charged, canceled, and surrendered the check to the drawer, he was thereby discharged from liability on the debt, even though the drawee bank's draft was not paid. (*Post, pp.* 246-248.)

4. SAME. Same. Same. Rights of owner of check against collecting bank for receiving draft in its payment and for sending it to the drawee bank for collection.

Where a bank, employed to collect a check on another bank, forwarded it directly to the drawee bank, and accepted in payment of the check from such bank its draft on a third bank, the owner of the check had the right to accept the draft so taken in payment of the check; or he could, if the collecting bank had no right to receive such draft, repudiate the transaction and sue for the negligence of the collecting bank, both in surrendering the check and taking for it the draft, and also in failing to present the check to the drawee bank by some other agent than the latter bank itself. (*Post,* p. *p.* 248, 249.)

Case cited and approved: Bank v. Johnson, 6 N. D., 180.

5. SAME. Same. Same. Same. Ratification of the acts of the collecting bank estops ratifier to sue for its negligence therein when.

Where a bank, employed to collect a check on another bank, forwarded the check directly to the drawee bank, and accepted in payment of the check a draft on a third bank, which draft

Milling Co. v. Bank.

was in turn accepted by the owner of the check for whom the collection was being made, the acceptance of the draft by the owner was a ratification of the act by the collecting bank in taking the draft, and hence precluded him from suing the collecting bank for its conduct in sending the check directly to the drawee bank, as the draft so ratified and accepted was the product of that act. (*Post, pp.* 249, 250.)

6. SAME. Deposit of check as cash may be charged off, if worthless.

The mere fact that a bank credits a check deposited for collection as cash does not render the bank liable to the depositor for the amount of the check, if the check is worthless or subsequently dishonored. It is almost the universal usage to credit such collections as cash, unless the customer making the deposit is in weak credit, and in case the check is unpaid to charge it off and return it to the depositor. (*Post, pp.* 250, 251.)

Case cited and approved: Hazlett v. Bank, 132 Pa., 118, 125.

7. SAME. Bank cannot absolve itself from its own negligence in making collections by its warning notice.

A bank cannot absolve itself from its own negligence in making collections by a warning printed on its stationery stating that it will not be liable for loss in collections. (*Post, pp.* 232, 248.)

Cases cited and approved: Sash & Door Co. v. Bank, 76 Minn., 136.

8. JURISDICTION. Supreme court has none, where there was no decree in the court of civil appeals, when.

Where, by some chance, no notice was taken by the court of civil appeals of the writ of error filed by the complainant against one of the defendants not before that court by appeal, the supreme court, upon *certiorari*, has no jurisdiction of that particular controversy, because there was no decree entered in respect of that party in the court of civil appeals. (*Post, pp.* 232, 250.)

FROM FRANKLIN.

Appeal and Writ of Error from the Chancery Court of Franklin County to the Court of Civil Appeals, and by Certiorari from the Court of Civil Appeals.—T. M. McCONNELL, Chancellor.

CROWNOVER & CRABTREE, for complainant.

ESTILL & LITTLETON, for defendant Bank of Winchester.

LYNCH & PHILLIPS, for defendant Whitwell Mercantile Society.

JOHN W. GAUT, for defendant American National Bank.

MR. JUSTICE NEIL delivered the opinion of the Court.

The Whitwell Mercantile Society, located in Marion county, this State, was indebted to the Winchester Milling Company, located at Winchester, in Franklin county, and on account of such indebtedness forwarded to the milling company two checks, one for $242.15 and the other for $262, the two aggregating $504.15. These checks were drawn by the mercantile society on the Whitwell Savings Bank in favor of complainant, the

milling company.  On the 1st and 2d days of May, 1906, respectively, the complainant indorsed these checks, making them payable to the order of the Bank of Winchester, and deposited them to their credit as cash in the bank, and checked out the proceeds; their account being overchecked May 3d to the amount of $315.62.  For a number of years the Bank of Winchester and the American National Bank, of Nashville, Tennessee, had been in regular banking correspondence with each other.  The Bank of Winchester sent these two checks to the American National Bank for collection. There was only one bank at Whitwell; that is, the Whitwell Savings Bank, on which these checks were drawn. The American Bank promptly forwarded these checks to the Whitwell Savings Bank for payment.  They were marked by that bank "Paid," respectively, on May 3d and 5th.  That bank charged up the checks to the Whitwell Mercantile Society, and on May 5th both of them were surrendered to the society; the society having, at the time the checks were charged up, more than enough on deposit to pay them.  The Whitwell bank sent to the American National Bank, on account of these checks, two cashier's drafts on the Citizens' Bank & Trust Company, of Chattanooga.  These two drafts were promptly forwarded by the American National Bank to its banking correspondent at Chattanooga, and by the latter they were presented to the drawee bank for payment, and, payment being refused, they were duly protested and promptly returned to the American National Bank.

The American National Bank, having previously cred-
ited them to the Bank of Winchester, charged back
to that bank the amount of the two drafts, together
with the protest fees thereon; the whole amount-
ing to $509.15. The Bank of Winchester accepted the
drafts, and acquiesced in the action of the American
National Bank, and charged back to the complainant,
the Winchester Milling Company, the $509.15, notifying
the complainant of the fact, and on the 21st of June
surrendered the drafts to complainant. They were ac-
cepted by complainant without objection made at the
time, so far as the record shows. The evidence shows
that it was the universal custom in Nashville, and in
Winchester, and all over the country, to charge back
items received by banks for collection which had been
credited to depositors and returned unpaid. The evi-
dence also shows that this was the custom between the
American National Bank and the Bank of Winchester
and also the custom between the Bank of Winches-
ter and its patrons, including complainant. In ad-
dition to this, the American National Bank had
printed on its stationery, which it used, in acknowl-
edging the receipt of collections, the following: "All
items payable outside of Nashville received by this
bank for credit, or for collection, are taken at the sen-
der's risk. Should returns sent by the collecting agents
for such items be dishonored, the amount will be charged
back to the bank or banker from whom the item was
received. This bank assumes no liability for neglect

or default of collecting agents, nor for items lost in the mail, and hereby gives notice to that effect." There was another notice to the same effect, and in almost the same language, on the stationery of the American National Bank, but not limited to items payable outside of Nashville, being general in its terms, and covering all items taken by that bank for credit or collection. These blanks were used in the dealings between the American National Bank and the Bank of Winchester.

On May 10th the Whitwell Savings Bank suspended and went into the hands of a receiver.

On July 26th the original bill in this case was filed against the Bank of Winchester, the American National Bank, and the Whitwell Mercantile Society. There was subsequently an amended bill. It is not necessary to recite the contents of these bills, further than to say that the original bill was amended by the amended bill so as to charge that the Bank of Winchester forwarded the checks to the American National Bank for collection, and that the latter bank forwarded them to the said Whitwell Savings Bank for collection; that thereupon the Whitewell Savings Bank forwarded to the American National Bank the cashier's drafts above mentioned in settlement for the checks; and that the said checks and cashier's drafts were not collected, because of the negligence of the American National Bank "in its failure to present said checks and drafts for payment within a reasonable time and in due course."

There was no evidence offered in the court below that there was any custom among the banks of this State, or in the business of the Bank of Winchester or of the American National Bank, that collections should be sent, or could properly be sent to the drawee bank. Likewise there was no evidence of any instructions on the part of complainant that would justify such a course of business.

The chancellor dismissed the bill as to the Bank of Winchester, but rendered a decree in favor of the complainant against the American National Bank and the Whitwell Mercantile Society for the amount of the checks and interest, and the other items making up the sum of $509.15 above mentioned.

From this judgment the American National Bank prayed an appeal to the court of civil appeals, and the Whitwell Mercantile Society carried the case into that court by writ of error. The complainant also filed the record for error in that court, to have reviewed the decree of the chancellor dismissing its bill as to the Bank of Winchester.

By some chance, no notice was taken by the court of civil appeals of the writ of error filed by the complainant against the Bank of Winchester. That court, however, reversed the decree of the chancellor as to the American National Bank and the Whitwell Mercantile Society. Thereupon the original complainant brought the case to this court by the writ of *certiorari* to review the action of the court of civil appeals.

The foregoing facts present several questions for decision. The first question suggested is whether the American National Bank acted negligently in sending the collection directly to the drawee bank. The next concerns the effect and result of the American National Bank's taking from the Whitwell Savings Bank the drafts on Chattanooga in payment of the checks sent for collection; next, the effect of the acceptance and reten-tion of these drafts by complainant, when turned over to it by the Bank of Winchester, and the allegations of the bill as to negligence on the part of the American National Bank in this regard. Another question that may present itself for solution is whether the Whitwell Mercantile Society is still liable.

Under the rule designated by Mr. Morse as the Massachusetts rule, which prevails in Tennessee and several other States, each successive bank handling an item for collection is agent of the owner, and liable to him for the discharge of the duties incumbent upon collecting agents, and the several banks in the course of the chain of transmission are held responsible only for the selection of proper agents, and for their own diligence and propriety of action in respect of the collection. *Bank of Louisville* v. *Bank of Knoxville,* 8 Baxt., 101, 35 Am. Rep., 691; *Bank* v. *Cummings,* 89 Tenn., 609, 18 S. W., 115, 24 Am. St. Rep., 618; Morse on Banks and Banking, section 214.

The author last referred to says, in respect of the selection of the drawee bank as agent:

"In this country the party who is to pay a check is not a suitable agent for its collection. A Chicago bank received a certified check for collection, and sent it to the drawee bank. The latter mailed in return a worthless draft, surrendered the check to the drawer as paid, failed, and closed its doors. The Chicago bank was liable to the depositor for the full amount of the check. The debtor cannot be the disinterested agent of the creditor to collect the debt, and it can not be considered reasonable care to select an agent known to be interested against the principal, to put the latter into the hands of its natural adversary." Morse on Banks and Banking, section 236 (a), citing *Drovers' National Bank* v. *Anglo-American P. & P. Co.*, 117 Ill., 100, 7 N. E., 601, 57 Am. Rep., 855. To the same effect is 1 Daniel, Neg. Inst., 328a; 3 Amer. and Eng. Enc. of Law (2d Ed.), p. 809; and 5 Cyc., p. 506.

On the page of the Encyclopedia of Law referred to will be found the following:

"The forwarding bank must exercise due care in the selection of the correspondent to whom it transmits the paper for collection, and it will be liable for negligence in selecting an unsuitable correspondent. The bank upon which the bill is drawn is not a suitable agent to collect the bill, and the forwarding bank must answer for all loss occurring as the result of such a selection"—citing numerous authorities.

On the page of Cyc. referred to will be found the following:

"The old rule that paper may be sent to the drawee for payment no longer prevails in many States, notwithstanding the custom of thus sending it; but some States which deny the legality of the rule permit the paper to be sent to the drawee when there is no other bank in the place known by the owner, and collection by a different method would be costly and inconvenient. These rules may be modified, of course, by instruction or agreement."

The latter publication cites in the notes all of the cases, so far as we have been able to find, upon the subject, except a few which have been decided since that publication came out.

On the proposition that the drawee bank is not a proper agent for selection by a transmitting or collecting bank the following cases are cited: *Lowenstein* v. *Bresler,* 109 Ala., 326, 19 South., 860; *German National Bank* v. *Burns,* 12 Colo., 539, 21 Pac., 714, 13 Am. St. Rep., 247; *Drovers' National Bank* v. *American Provision Co.,* 117 Ill., 100, 7 N. E., 601, 57 Am. Rep., 855; *Anderson* v. *Rodgers,* 53 Kan., 542, 36 Pac., 1067, 27 L. R. A., 248; *Chicago First National Bank* v. *Citizens' Savings Bank,* 123 Mich., 336, 82 N. W., 66, 48 L. R. A., 583; *Minneapolis Sash & Door Co.* v. *Metropolitan Bank,* 76 Minn., 136, 78 N. W., 980, 44 L. R. A., 504, 77 Am. St. Rep., 609; *American Exchange National Bank* v. *Metropolitan National Bank,* 71 Mo. App., 451; *Western Wheeled Scraper Co.* v. *Sadilek,* 50 Neb., 105, 69 N. W., 765, 61 Am. St. Rep., 550; *National Bank of Commerce*

v. *Johnson,* 6 N. D., 180, 69 N. W., 49; *Wagner* v. *Crook,* 167 Pa., 259, 31 Atl., 576, 46 Am. St. Rep., 672; *Hazlett* v. *Commercial National Bank,* 132 Pa., 118, 19 Atl., 55; *Harvey* v. *Girard National Bank,* 119 Pa. 212, 13 Atl., 202; *Merchants' National Bank* v. *Goodman,* 109 Pa., 422, 2 Atl., 687, 58 Am. Rep., 728; *Givan* v. *Alexandria Bank* (Tenn. Ch. App., 1898), 52 S. W., 923, 47 L. R. A., 270; *Corsicana First National Bank* v. *Dallas City National Bank,* 12 Tex. Civ. App., 318, 34 S. W., 458; *Evansville First National Bank* v. *Louisville Fourth National Bank,* 56 Fed., 967, 16 U. S. App., 1, 6 C. C. A., 183; *Farwell* v. *Curtis,* 7 Biss. (U. S.), 160, Fed. Cas. No. 4690.

We have examined all of the foregoing cases, except the last, which is not accessible to us, and find that they fully sustain the text to which they are cited.

Other later cases are *Bank* v. *Hendrix,* 147 Ala., 670, 39 South., 295, 1 L. R. A. (N. S.), 246; *Bank* v. *Pollock & Bernheimer,* 145 Ala., 321, 39 South., 612, 2 L. R. A. (N. S.), 194, 117 Am. St. Rep., 44; *Carson & Co.* v. *Fincher,* 129 Mich., 687, 89 N. W., 570, 95 Am. St. Rep., 449; *Bank of Rocky Mount* v. *Floyd,* 142 N. C., 187, 55 S. E., 95.

We shall refer particularly to a few of the foregoing cases.

The case of *Givan* v. *Bank of Alexandria et al.,* 52 S. W., 923, was decided by the court of chancery appeals of this State, and affirmed orally by this court on January 10, 1899. It will be found reported in the publi-

cation above referred to, and also in 47 L. R. A., 270. In that case it appeared that certain checks were placed in the hands of the Bank of Alexandria for collection on the bank of A. Bryan & Co., of Watertown, this State. The Bank of Alexandria transmitted the checks to its correspondent at Nashville, the First National Bank, and the latter transmitted the checks directly to the drawee bank, and they were never paid. Upon this subject the court said:

"It follows that under the facts found the Bank of Alexandria exercised proper care in selecting the First National Bank as an intermediary, and that its duty was then discharged to the complainant when it sent the paper by the mail of the next day to said First National Bank, and the latter became the agent of the complainant. It is true that when the First National Bank sent the check directly to the drawee bank it was guilty of negligence. The authorities upon this point in favor of the proposition stated are overwhelming"—citing *Merchants' National Bank* v. *Goodman*, 109 Pa., 422, 2 Atl., 687, 58 Am. Rep., 728; *Drovers' National Bank* v. *Anglo-American Packing & Provision Co.*, 117 Ill., 100, 7 N. E., 601, 57 Am. Rep., 855; *Anderson* v. *Rodgers*, 53 Kan., 542, 36 Pac., 1067, 27 L. R. A., 248, and note to the latter case containing a collection of the authorities.

In *Anderson* v. *Rodgers* it is said:

"In this case the check seems to have been forwarded for payment in due time; but it was sent directly to the drawee by mail, with the request that the Bank of Whit-

field [the drawee bank] remit the amount of mail in exchange on Kansas City. The Hamilton County Bank, therefore, selected the drawee of the check as its agent for collection. That this was negligent is well settled by the authorities. It is said in Daniel on Neg. Inst. vol. 1, section 228a: 'For the purposes of collection, the collecting bank must employ a suitable subagent. It must not transmit its checks or bills directly to the bank or party by whom payment is to be made, with the request that remittances be made therefor. It is considered that no firm, bank, corporation or individual can be deemed a suitable agent, in contemplation of law, to enforce in behalf of another a claim against itself.' This proposition is sustained by abundant authority."

In *Minneapolis Sash & Door Co.* v. *Metropolitan, Bank,* supra, the same proposition is laid down, and the same text of Daniel is quoted with approval.

In *First National Bank* v. *Citizens' Savings Bank,* supra, it is said:

"The main question in this case, and in fact about the only question, is whether the defendant was justified in sending the certificate directly to Parsons [a private banker, the drawee] for collection. It is conceded by counsel for defendant that, in the absence of instruction to do so, it is negligence to send a collection directly to the drawee, and such negligence makes the sender liable for any loss resulting. We think this rule is sustained by the authorities"—citing authorities.

It is unnecessary to quote further from the authorities

on this side of the question. The only authorities to the contrary that we have any knowledge of are cited in note 81, p. 506, 5 Cyc., being certain New York cases and some English cases and the case of *Kershaw* v. *Ladd,* 34 Or., 375, 56 Pac., 402, 44 L. R. A., 236, and *Trinidad First National Bank* v. *Denver First National Bank,* 4 Dill. (U. S.), 290, Fed. Cas., No. 4810. The leading New York case cited is *Indig* v. *National City Bank,* 80 N. Y., 100. Of this case the New York court said, in the later case of *St. Nicholas Bank* v. *State National Bank,* 128 N. Y., 26, 32, 27 N. E., 849, 13 L. R. A., 241, that it was "a broader case," and that its doctrine should not be extended. We do not think the case of *Kershaw* v. *Ladd* sustains the text. We shall have occasion to refer to this more particularly infra.

We do not think that the text of Cyc., supra, is sustained by the authorities cited in the foot note, in which text it is said: "Some States which deny the legality of the rule permit the paper to be sent to the drawee when there is no other bank in the place known by the owner, and collection by a different method would be costly and inconvenient." The cases cited on this subject are *Wilson* v. *Carlinville National Bank,* 187 Ill., 222, 58 N. E., 250, 52 L. R. A., 632, and *Minneapolis Sash & Door Co.* v. *Metropolitan Bank,* 76 Minn., 136, 78 N. W., 980, 44 L. R. A., 504, 77 Am. St. Rep., 609. Other authorities upon the point are *Kershaw* v. *Ladd,* 34 Or., 375, 56 Pac., 402, 44 L. R. A., 236; *Drovers' National Bank* v. *American Provision Co.,* supra; *American Exchange National*

*Bank* v. *Metropolitan National Bank,* 71 Mo. App., 451; *Bank* v. *Floyd,* 142 N. C., 187, 55 S. E., 95.

In *Wilson* v. *Carlinville National Bank,* the court said: "The evidence sufficiently tended to show, and the court recited, in proposition No. 5, held for the appellee, 'that it is a well-known, long-established, and general custom of collecting banks to transmit directly to their correspondent out of town banks for collection checks drawn upon such out of town banks and in their hands for collection, in cases where there is no other bank in such town.' It also appeared from the testimony, and was recited by the court in proposition No. 1, in the same behalf, that the Citizens' Bank of Gillespie was the only bank in Gillespie. The evidence further sufficiently recited that appellant knew there was but one bank in Gillespie, namely the Citizens' Bank, upon which the check he held was drawn. It was also shown by the proofs that the appellant had, on prior occasions, deposited with the appellee bank other checks upon out of town banks, and availed himself of the facilities offered by the system adopted and in vogue only among banks and bankers for the collection of that class of paper. He may not have known the details of the system or custom in force among banks for the collection of such checks, but he knew the collection was to be made, without expense to him, through banks co-operating together, in compliance with certain usages and customs existing between such institutions to enable such collections to be so made. He knew there was but one bank

in Gillespie, and that the one on which the check was drawn. The co-operation of that bank was essential to the operation of the mode of collecting checks, for there was no other bank at Gillespie to act in the matter. With this knowledge the appellant accepted the benefit of the facilities for the collection of his check which the bank held out to their customers. The usages and customs thus availed of by appellant contemplated the sending of the check directly to the bank upon which it was drawn, there being no other bank at that point. The appellant, having knowledge there was but one bank at Gillespie, and that his check was to be collected, without cost or expense to him through the medium of business usages and customs in force only between banks and bankers, could not be permitted to accept the facilities thus afforded by the appellee bank for his accommodation, and afterwards insist that compliance by the appellee bank with the usages and customs, the benefit whereof he sought to avail himself of, should constitute actionable negligence."

In *Minneapolis Sash & Door Co.* v. *Metropolitan Bank,* supra, it was said: "We have stated the grounds upon which the defendant attempts to justify. It did show that it was usual and customary for banks to send checks and drafts payable to other banks at distant points to the drawee direct and by mail, provided there was no other bank of good standing in the same town; while plaintiff was allowed to prove that an express

company, whose business it was to collect and transmit money, had offices in both places. We fail to see what possible effect upon a case of this kind the fact that the drawee is the only bank in good standing in the town can have upon the duty of a bank which undertakes the collection. Any reason for such a course is equally as sound where there are two or more banks in the town as where there happens to be but one. While the syllabus of one of the cases cited in support of counsel's proposition (*Western Wheeled Scraper Co.* v. *Sadilek,* 50 Neb., 105, 69 N. W., 765, 61 Am. St. Rep., 550) may justify him, the opinion does not. We cannot agree with counsel that the usage and custom here relied upon is a defense to the claim that defendant was negligent when forwarding this check to the Mapleton Bank for presentation and payment. As a general rule, usage and custom will not justify negligence. It may be admitted that such a course is frequently adopted, but it must be at the risk of the sender, who transmits the evidence of indebtedness upon which the right to demand payment depends to the party who is to make the payment. Such a usage and custom is opposed to the policy of the law, unreasonable, and invalid. It was so decided in *Drovers' Nat. Bank* v. *Anglo-American Packing & P. Co.,* 117 Ill., 100, 7 N. E., 601, 57 Am. Rep., 855, and *Merchants' Nat. Bank* v. *Goodman,* 109 Pa., 422, 2 Atl., 687, 58 Am. Rep., 728. Counsel for defendant has cited two cases from the English law reports and three from the New York court of appeals as authority upon this ques-

tion.   An examination of these cases will show that this exact question was not decided."

In *Drovers' National Bank* v. *Anglo-American P. & P. Co.,* supra, it was said that it made no difference if the collecting bank did not know of any other bank at the place.   Said the court:   "If appellant had no correspondent or agent at Cadillac through whom to make collection, it should have so informed appellee, and then acted on the directions of appellee."

In *Kershaw* v. *Ladd,* supra, it was said in the opinion: "The parties agree that at the time the transactions which form the basis of the present controversy took place there existed and still exists, among the banks in Portland and elsewhere, a general and well-established custom to the effect that when a bank or banker receives for collection an ordinary check against an account with a bank or banker situated and doing business at a place distant from where the collecting bank is located, and such collecting bank has no agent or correspondent at the place of the drawee bank, for the collecting bank to forward the check by mail directly to the drawee bank for collection and returns, and that it is also a general and well-established custom among such banks that when a bank or banker receives, from a bank or person at a distance, for collection and returns an ordinary check, drawn upon a bank situated at the same place as the receiving bank, for the receiving bank not to remit cash to the bank or person from whom such check was received, but to remit the check or draft, either of the

receiver or drawee bank, drawn upon the correspondent of such receiving or drawee bank at the place from which the original check was forwarded payable to the order of the bank or person from whom the check was received. It is contended by the respondent that these customs are to be considered the law of the case, and are controlling for the government of the parties, and that, measured thereby, the defendants are not chargeable with negligence for pursuing the course adopted in endeavoring to make the collection. Upon the other hand, it is maintained that the custom of sending the check direct to the drawee bank for collection and return is unreasonable, and therefore it does not and cannot obtain the sanction of law, and that such an act is negligence *per se,* which will, in case loss should occur by reason thereof, render the collecting bank liable therefor."

The conclusion reached by the court was: "Upon principle it would seem that the usage is not an unreasonable one, in so far, at least, as it may apply to the collection of a plain, unindorsed check."

In *American Exchange National Bank* v. *Metropolitan National Bank,* supra, it was said that the rule which forbids the collection to be sent directly to the drawee bank is not altered by the fact that there is only one bank in the place where the collection is to be effected, the drawee bank, and that it is the correspondent of the defendant. Continuing, the court said:

"Again, it was said to be customary for banks to trans-

mit collections to their correspondents, even though such correspondent was the debtor. To this we answer that it is not a reasonable custom, and therefore must fail of recognition by the court. We concede it may be, and perhaps is, in many instances, the most convenient mode for the bank intrusted with the collection; but if the bank adopts that mode it takes upon itself the risk of the consequences."

In *Bank* v. *Floyd,* supra, it was held: "It is negligence in a bank having a draft or check for collection to send it directly to the drawee; and this is true, though the drawee is the only bank at the place of payment. A custom by which a bank, having a check upon its own correspondent in good standing, intrusts it with the collection, is unreasonable and invalid, and if a bank adopts that mode it takes upon itself the risk of the consequences." 142 N. C., 187 (syl., points 3 and 4), 55 S. E., 95. And see *Whitney* v. *Esson,* 99 Mass., 308, 96 Am. Dec., 762.

In *First National Bank* v. *Citizens' Savings Bank,* supra, the general rule was announced that it was negligence to send directly to the drawee bank, even though it was the only bank at the point of collection; but the defendant in that case was protected because the court construed the letter sending the collection to the transmitting bank as in substance instructing that the paper might be sent to the drawee bank, or at least that it was clearly susceptible of the construction that such course was expected.

We need not consider the question whether the custom to send a collection to the drawee bank, when there is only one bank at the place of collection (the drawee bank), would be reasonable or the contrary, since in the case before us there is no evidence whatever that any such custom prevailed at the time the transactions under examination here took place.

It is clear therefore that the American National Bank was guilty of negligence in sending the collection directly to the Whitwell Savings Bank, the drawee.

It is equally clear from the evidence that, if the checks had been sent to some other person and presented at the counter of the bank on the day they reached there by mail, or within several days thereafter, they would have been paid in cash, inasmuch as it appears that the Whitwell Savings Bank continued to pay cash for several days thereafter, and did not fail until the 10th of the month.

The form of settlement which the American National Bank accepted consisted of drafts drawn in its favor by the Whitwell Savings Bank on a bank in Chattanooga, which were dishonored as soon as they reached that city; that is, on the 10th of the month.

Was the Whitwell Mercantile Society discharged by the settlement just referred to, as the result of which the Whitwell Savings Bank charged to it the two checks in controversy and canceled and surrendered them? We think it was. The Whitwell Mercantile Society had more than enough money on deposit at the

time the checks arrived to meet and satisfy them. The society had no means of preventing the application of their money to the checks and the cancellation of the latter. It was not incumbent upon the society to inquire whether the Whitwell Savings Bank had authority, since the possession of the checks for the purpose of collection constituted apparent authority, and it was entirely possible that the transmitting bank might have sent the checks to the Whitwell Savings Bank by consent of the holder. Even the holder himself might have sent them directly to the Whitwell Savings Bank. It was not the duty of the society to institute an inquiry as to the source from which the Whitwell Savings Bank had received the checks; that bank being at the time a reputable concern, and there being nothing to arouse suspicion or to put the society upon inquiry. The society had the right to rely upon the authority of the Whitwell Savings Bank, and rightly acquiesced therein. As the result of the transaction, and this acquiescence, the society lost in the failure of the Whitwell Savings Bank the amount represented by the checks; that is, if those checks had not been charged up to the society and canceled, the society would have drawn out that sum of money when it drew out the balance of its account on the 5th of the month.

It results, therefore, that the complainant sustained injury to the amount of the checks by reason of the negligence of the American National Bank; and, nothing

else appearing, that bank must respond to the complainant in the amount of the sum lost.

But it appears that the American National Bank, as already stated, took in settlement from the Whitwell Savings Bank drafts on Chattanooga. There is no evidence in the record that there is a custom among banks to make collections in this manner (that is, by receiving checks on other banks), and it is insisted by complainant that in the absence of a proven custom to take payment in this form, from which the consent of the owner of the check would be inferred in the act of putting the paper in bank for collection, such a method of settlement would be unauthorized—citing Morse on Banks and Banking, section 247. And see *Merchants' National Bank of Philadelphia* v. *Goodman et al.,* 109 Pa., 422, 2 Atl., 687, 58 Am. Rep, 728. And, if this was an act of negligence on the part of the American National Bank, the warning copied upon its stationery, supra, would be immaterial, because the bank could not thereby be protected against its own negligence. *Minneapolis Sash & Door Co.* v. *Metropolitan Bank,* 76 Minn., 136, 78 N. W., 980, 44 L. R. A., 504, 506, 77 Am. St. Rep., 609.

However, it is unnecessary to decide whether this was an act of negligence or not, because, when the complainant was informed that the drafts on the Chattanooga Bank had been accepted by the American National Bank, it had a right either to accept those drafts so taken in payment of the checks, or, if the bank had no right to receive such drafts, complainant could repudiate the

transaction and sue for the negligence of its agents, both in surrendering the checks and taking for them the Chattanooga drafts, and also in failing to present the checks to the drawee bank by some other agent than the latter bank itself. *National Bank of Commerce of Seattle* v. *Johnson*, 6 N. D., 180, 69 N. W., 49.

What actually transpired was this: When the drafts were dishonored at Chattanooga, and returned to the American National Bank, that bank transmitted them in due course to the Bank of Winchester, and that bank on the 21st of June turned these drafts over to the complainant. The complainant accepted them without objection, and subsequently brought the present action, and made it one part of its complaint against the American National Bank that the latter had failed to present these drafts for payment "within a reasonable time and in due course."

This was a ratification of the American National Bank's action in taking the drafts. It is immaterial that in the same connection in the bill the complainant joins the checks and drafts in his allegation of negligence against the American National Bank. The two demands are inconsistent. The complainant could not have a right of action for the failure of the American National Bank to duly present the Chattanooga drafts, unless it ratified the action of the American National Bank in taking those drafts; and if it did this it would have no right of action against the bank referred to for its conduct in sending the checks directly to the drawee

bank, because the drafts so ratified and accepted were the product of that act.

On the ground thus stated we are of opinion that the complainant has no right of action against the American National Bank; it not being shown that that bank was in any default in its treatment of those drafts after they came into its hands.

We cannot consider the rights asserted against the Bank of Winchester, inasmuch as there was no decree entered in respect of that party in the court of civil appeals. This being true, we have no jurisdiction of that particular controversy.

Before closing the opinion it may not be improper to add one remark concerning some observations that were made during the discussion of the case at bar, and also in the briefs, to the effect that the Bank of Winchester had credited the checks when it received them as cash, and permitted the complainant to check out all the money. This is an immaterial subject. As said by Paxson, C. J., referring to one who had deposited a check for collection with a bank: "The mere fact that the collecting bank credited him with the check as cash did not alter that relation [the agency of the bank for collection]. This is done daily; indeed, it is the almost universal usage to credit such collections as cash, unless the customer making such deposit is in weak credit. If the check is unpaid, it is charged off again, and the unpaid check returned to the depositor." *Hazlett* v. *Com-*

Milling Co. v. Bank.

*mercial National Bank,* 132 Pa., 118, 125, 19 Atl., 55, 56.

For the reasons and on the ground stated, we are of opinion that complainant is not entitled to recover against either of the parties defendant in this court.

The bill will therefore be dismissed, at the cost of the complainant.