### CARSON, PIRIE, SCOTT & CO. *v.* FINCHER.

1. CHECKS—PRESENTATION—LIABILITY OF DRAWER.

    The forwarding of a check by mail to the bank on which it is drawn is not such a presentation of the check as will charge the drawer thereon.

2. SAME—HARMLESS OMISSION.

    But if the drawer had no funds in the bank with which to pay the check, or if the bank was without funds to pay it, and the drawer is given timely notice of nonpayment, his liability continues, notwithstanding such defective presentment.

3. SAME—FRAUD—EVIDENCE.

    Knowledge by the drawer of a check of facts tending to show that the bank on which it is drawn is not particularly strong, but not leading to the conclusion that the check in question will not be paid if properly presented, is not sufficient to charge him with fraud in sending the check to a creditor, so as to prevent his reliance on the defense of want of notice of dishonor.

Error to Oceana; Russell, J. Submitted January 8, 1902. Decided March 18, 1902.

*Assumpsit* by Carson, Pirie, Scott & Company against Francis W. Fincher and Charles Jensen, copartners as

F. W. Fincher Company, to recover the amount of a protested check. From a judgment for plaintiff, defendants bring error. Reversed.

*Smith, Nims, Hoyt & Erwin,* for appellants.

*Hartwick & Skeels* and *W. S. Hanson,* for appellee.

MOORE, J. The plaintiff is a wholesale dealer residing and doing business at Chicago, Ill. The defendants are retail dealers residing and doing business in the village of Pentwater, in this State. On the 8th of May, 1900, defendants were indebted to plaintiff for goods purchased to the amount of $192.39, which account was subject to a discount if paid within 30 days, leaving the account, if paid in the month of May, $184.29. The defendants, on the 8th day of May, 1900, mailed to plaintiff their check, drawn on Nielsen & Co., bankers at Pentwater, for $184.29. Plaintiff, on the 10th of May, 1900, received said check, and deposited it with the First National Bank of Chicago for collection, which bank forwarded the check by mail to Nielsen & Co., who received the same on May 11th, but made no remittance therefor. The defendants, after learning of the receipt of said check by plaintiff, heard nothing further concerning it until on or about the 22d day of the same month, on which day they were notified by plaintiff that the check had not been paid. Nielsen & Co. continued to do business to and including Saturday, the 19th day of May, but did not open their doors on Monday, the 21st, and on or about the last-named day said bank was put into the possession of a receiver. The receiver returned the check to plaintiff. There was a mail twice daily each way between Pentwater and Chicago; also an express daily each way, with usual route and local agents. It is the claim of defendants that when said check was drawn, and at all times, defendants had sufficient funds on deposit at said bank to meet said check. In July the bank of Nielsen & Co. was declared bankrupt. The petition filed in the United States district court

to have said firm adjudicated bankrupt states two grounds
of bankruptcy,—one as occurring on the 23d of April,
1900; the other, on the 18th of May following. The de-
fendants claim there was no evidence that the defendants
had no money in the hands of Nielsen & Co. at the time
the check was drawn, or that they had reason to believe
the check might not be paid on presentation.

The trial judge instructed the jury, among other things,
as follows:

"1. If you find that defendants had no effects in the
hands of Nielsen & Co. at the time the check in ques-
tion was drawn, and had no reason to expect any, and had
reason to believe that the check would not be paid when
presented, notice of dishonor could do them no good, and
want of notice would not be a defense.

"2. If you find that, at the time the check was drawn,
the drawee bank was in an insolvent condition, that checks
drawn by defendant on said bank while he had funds there
had not been paid when presented, and defendant had
knowledge of this fact, which he did not communicate to
the plaintiff, and plaintiff had no knowledge of such in-
solvent condition, the drawing of a check under these con-
ditions is a fraud on the payee, and defendant was not
entitled to notice.

"3. If you find that the defendants drew a check for
the purpose of using that as a means of withdrawing their
funds from the bank in anticipation of its failure, and sent
it to the plaintiff, who was ignorant of its condition, they
were not *bona fide* makers, and cannot plead want of no-
tice.

"4. Inasmuch as checks are payable in current funds,
and inasmuch as the bank cannot act as agent of both
parties, it is a duty to have them presented by some party
who can receive the funds. In this case, as the evidence
shows, the presentation was made by mail; and they un-
questionably asked the parties to remit, and that would be,
of course, by draft. Those things are established."

The judge told the jury the check had not been properly
presented, and then said:

"The plaintiff says that, while that may be a rule, they
are exonerated from taking that course, because of the
fact that Nielsen & Co. were insolvent, and because of the
129 Mich.—44.

fact that defendants here knew that they were insolvent, and knew, or had a right to know, that if the check was presented there it would not be paid, and consequently they have not suffered. Well, if they have not, gentlemen, and they knew these things, and that check was sent for the purpose and did commit a fraud on the parties to whom they sent it, by drawing a check upon a bank,—a check that was absolutely worthless,—and sending it to them, why, they are not entitled to notice; they have not lost anything because it was not presented there by some man in proper person; and, if you find that to be the fact from the evidence in the case, of course, your verdict will be for the plaintiff.

"5. There is another reason why the plaintiff claims that the defendants are not entitled to notice, and that is that the defendants did not have any funds there to pay the check at the time it was drawn, at the time it was presented, taking into consideration the other drafts they had made. Now, if that is true, of course, the defendants were not entitled to notice.

"6. Now, those are really the two questions of fact upon which you gentlemen must pass. Was the situation such, and were they known to the defendants in this case at the time that the check was drawn, that they committed a fraud by imposing upon plaintiff, to whom they sent this check? If they did, the plaintiff is entitled to recover.

"7. If they did not have any funds there with which to pay the check, the plaintiff is entitled to recover."

To which instructions error is assigned. Under the charge, a verdict was rendered in favor of plaintiff and against the defendants for the sum of $199.80.

It is claimed there was no evidence to support the instructions. The testimony of Mr. Fincher tends to show that, while the bank books showed a balance of $775.22 in favor of defendants, when the check in question was drawn the firm had accepted a draft and drawn checks that were outstanding, amounting to $773.06. As against this testimony, there was testimony tending to show the defendants had funds in the bank sufficient to pay this and all other outstanding checks, and that the bank had funds when the check was received at the bank, and that, if the

check had been presented over the counter, it would have been paid. This raised a question for the jury.

It is pretty well settled in this country that when a check is sent to some other place than where the bank is located upon which it is drawn, and it is put into a bank for collection, it is the duty of the bank to forward it in proper time to a subagent selected with due care. The bank should use every reasonable precaution to secure the collection, if possible; and if it has been careless in the choice of an agent, and selected one it knew, or ought to have known, was an improper one, it will be answerable for any injury which results therefrom. The bank upon which a check is drawn is not a suitable agent for its collection, and the judge was right in so instructing the jury. 1 Morse, Banks (3d Ed.), § 236. But even though an improper agent has been selected, if the drawer of the check had no funds with which to pay the check had it been presented in proper time, or if the bank had no funds with which to pay it, no harm has come to the maker of the check, and, if given timely notice, he would continue to be liable; but if, on the other hand, as claimed by the defendants, the maker of the check had funds to his credit in the bank, and the bank had funds, and the check would have been paid if presented over the counter in proper time, then the maker of the check would have been discharged.

We do not think, under the evidence in the case, it was proper to say to the jury that they might say, under the facts proven, that defendants committed a fraud by sending plaintiff this check. It is true, the defendants had learned facts from which they might infer that the bank was not as strong as many banks; but it does not appear that they had any reason to suppose that, if the check was presented properly and in a reasonable time, it would not be paid. They had a right to assume that the plaintiff was familiar with the law, and, if it accepted the check, it would select a proper agent to present it, and that it would be presented in proper time, and, if it was not paid,

defendants would be notified. If the plaintiff had done what it was its duty to do, no harm would have come to it. If the check was paid, that would have ended the transaction. If it was not paid, defendants would have been notified, when it would have been their duty to make the check good, and no harm would have come to the plaintiff. This being so, we cannot see how the inference of fraud could be drawn from what was done.

For these reasons, judgment is reversed, and a new trial ordered.

HOOKER, C. J., and GRANT, J., concurred. LONG and MONTGOMERY, JJ., did not sit.